## UNITED STATES v. OREGON-WASHINGTON R. & NAV. CO.

(Circuit Court of Appeals, Second Circuit.    April 24, 1918.)

### No. 229.

1. INTERNAL REVENUE ⬤⟞9—CORPORATION—EXCISE TAX—NATURE OF ACT.

Corporation Excise Tax Act Aug. 5, 1909, § 38, must be construed as imposing an excise tax upon the right to do business, in corporate form; so, if persons choose the corporate form for business, the corporate income may be estimated upon the assumption that the form is to be regarded as the reality.

2. INTERNAL REVENUE ⬤⟞9—CORPORATION EXCISE TAX—"INCOME."

Under Corporation Excise Tax Act Aug. 5, 1909, § 38, the term "income" must be accepted as those more or less periodic earnings, as distinguished from permanent sources of wealth; hence, where the sole stockholder of a corporation which furnished the capital released a debt in favor of the corporation, such sum should be treated as capital rather than income, though such a release cannot be treated as a mere matter of bookkeeping, but as adding to the corporate assets.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income.]

3. PLEADING ⬤⟞339—DEMURRER—WITHDRAWAL.

Whether the trial court will allow a demurrant to withdraw his demurrer is a matter of discretion, and whenever a demurrer is interposed the demurrant takes that risk.

4. PLEADING ⬤⟞339—DEMURRER—WITHDRAWAL—ABUSE OF DISCRETION.

The trial court's refusal to allow plaintiff, which had demurred to the answer, to withdraw the demurrer on it being overruled, cannot be treated as an abuse of discretion, where no request to withdraw was made.

Ward, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

Action by the United States against the Oregon-Washington Railroad & Navigation Company. There was a judgment overruling a demurrer to the answer, and dismissing the complaint, and the United States brings error. Affirmed.

Writ of error to a judgment overruling a demurrer to the answer, without leave to plead over, and dismissing the complaint. The complaint was for an excise tax against the defendant under section 38 of the Act of August 5, 1909 (36 Stat. 112, c. 6). The complaint alleged that on January 10, 1913, the defendant filed its report showing an income of $2,282,192.33, which was incorrect; the true income being $8,472,361.92. The relief demanded was for 1 per cent. upon the difference, $6,190,769.57, amounting to $61,907.70.

The answer omitting denials, showed in substance as follows: That the defendant was organized in November, 1910, all its stock being held by the Oregon Short Line Railroad, itself a part of the Union Pacific Railroad system and controlled by that company. The Union Pacific Railroad caused certain properties to be conveyed to the defendant by certain subsidiary corporations, which paid for them by a draft in favor of the sellers, drawn by the defendant and accepted by the Short Line. This draft the Short Line paid, and received back its proceeds from the selling corporations as dividends upon their stock, substantially all of which the Short Line held. The amount of these dividends was somewhat larger than the value of the property conveyed as it stood on the books of the selling corporations or as the value

of their stock stood on the books of the Short Line. The amount of this difference was the sum here in question, $6,190,769.57, which therefore showed as a profit on the books of the Short Line.

The payment of the consideration by this acceptance the Short Line charged against the defendant, partly as payment for the stock of the defendant and partly as money lent it; the total sum paid by the Short Line being $50,000,-000 for the stock and $50,450,000 as money lent. Early in 1911 the defendant delivered $40,000,000 of bonds to the Short Line, for which it received a credit of $36,000,000 leaving it indebted to the Short Line for money lent in the sum of about $14,450,000. To prevent an apparent profit to the Short Line from the transaction, it wished to reduce this indebtedness by the amount of that profit, and on June 30, 1911, released its debt against the defendant to the amount of $6,190,769.57. This release the plaintiff seeks to treat as a part of the defendant's income.

Francis G. Caffey, U. S. Atty., of New York City (Ben A. Matthews, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Henry W. Clark, of New York City, for defendant in error.

Before WARD and ROGERS, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). [1, 2] The act in question has been authoritatively held to be an excise upon the right to do business in corporate form, Anderson v. Forty-Two Broadway Co., 239 U. S. 69, 36 Sup. Ct. 17, 60 L. Ed. 152; Stratton's Independence v. Howbert, 231 U. S. 399, 34 Sup. Ct. 136, 58 L. Ed. 285. As such the income is the measure of the tax upon the right, and not the property upon which the tax is assessed. If persons choose the corporate form for business, we think that the corporate income may be estimated upon the assumption that the form is to be regarded as the reality. Indeed, this is nearly a corollary from the premise that the tax is upon the right to do business in that form. We are not, therefore, disposed to say that a sole stockholder's release of a debt against the corporation is mere matter of bookkeeping. As the stockholder views it, that is no doubt the case, at least while the corporation stays solvent; indeed, it is no more than if a mortgage were changed into a debt. Viewed from the corporation's side, we cannot, however, agree that the increased value of the stockholder's shares is to be deemed a charge upon the corporation equivalent to the canceled debt. His right as stockholder is, it is true, a chose in action; but it is, of course, not to be taken as a claim upon the corporation when its net assets are in question, else it could never get any increase of assets, for shares are always proportionally increased in value as the assets increase. At least when we have, as here, a question turning upon the right to use the corporate form, we must treat the release as involving an actual addition to the corporate assets.

However, the tax, though it includes income "from all sources," nevertheless includes "income" only, and the meaning of that word is not to be found in its bare etymological derivation. Its meaning is rather to be gathered from the implicit assumptions of its use in common speech. The implied distinction, it seems to us, is between permanent scources of wealth and more or less periodic earnings. Of course, the term is not limited to earnings from economic capital; i. e., wealth

industrially employed in permanent form. It includes the earnings from a calling, as well as interest, royalties, or dividends, though in the case of corporations this may be of slight importance. Yet the word unquestionably imports, at least so it seems to us, the current distinction between what is commonly treated as the increase or increment from the exercise of some economically productive power of one sort or another, and the power itself, and it should not include such wealth as is honestly appropriated to what would customarily be regarded as the capital of the corporation taxed.

Now, it seems to us hardly arguable that the cancellation of the debt in question was not in the category of capital. The corporation had just commenced its business; the cancellation of the debt was a means of contribution to its capital account, quite as though the money had been contributed by the stockholder only to enhance the value of his stock. The financial relief, so given, will, it is true, be eventually reflected in the income, since the defendant will no longer be entitled under the act to deduct the interest on the debt; but that only brings out more clearly its character as capital contribution. We regard the difference as precisely equivalent to the difference between the cancellation of a portion of the mortgage bonds and a cancellation of an equal proportion of their coupons. Common usage would, if we are right, unfailingly allocate the first as an increase in capital assets and the second as an increase in income. That, as we view it, is the proper test of the act.

Nor does Stratton's Independence v. Howbert, supra, look to the contrary. The court divided in that case upon the propriety of regarding as income the whole of each yearly extraction of minerals from a deposit necessarily limited in amount; but the decision proceeded upon the assumption that the common understanding of the term "income" did not cut so fine, but lumped together the whole gross output. Our present decision depends altogether upon the correctness of our own interpretation of the same common usage, when applied to a case like this.

[3, 4] The District Court refused to allow the plaintiff to plead over, upon the ground that the matter rested in its discretion and that the plaintiff had not asked for any exercise of that in discretion, but based its claim upon an absolute right. We agree that the cases are very rare in which a party should not be allowed to withdraw a demurrer, which is all that would have been necessary here; for no further pleading was proper, unless the defendant demanded it. Still the matter does lie in discretion, and the demurrant always accepts the risk of being taken at his word. There are certainly no grounds shown in the record which would justify our saying that the refusal was an abuse of discretion, at least in the face of the statement in the opinion that no such appeal to it was made.

The judgment is affirmed, with costs.

WARD, Circuit Judge (dissenting). I quite agree with the majority of the court that the credit given by the Short Line upon the defendant's indebtedness to it was a gift, and not a mere bookkeeping entry.

It was not a return of capital, and I think was clearly a part of the defendant's gross income derived from all sources during the year in question. The meaning of the word "income" does depend upon its context; but this gift did come in during the year, was a part of the year's net income defined by the act, and I find no difficulty in calling it income. The excise tax sued for is measured by the defendant's net income, ascertained by deducting from its gross income received from all sources certain specified items, which do not cover gifts. The Income Tax Laws of 1913, 1916, and 1917 expressly provide that only the income of gifts is to be taxed, from which it may be inferred, that but for this provision, the gifts themselves would have been taxed as income.