## GUY v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Fourth Circuit. October 15, 1929.

No. 2870.

J. W. Pless, of Asheville, N. C. (J. C. Martin, of Asheville, N. C., and J. W. Winborne, of Marion, N. C., on the brief), for petitioner.

Norman D. Keller, Sp. Asst. Atty. Gen. (Sewall Key, Sp. Asst. Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and John G. Harlan, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before PARKER, Circuit Judge, and GRONER and SOPER, District Judges.

SOPER, District Judge. A petition was filed with the United States Board of Tax Appeals by W. W. Guy, administrator of the

estate of A. Blanton, to secure a redetermination of the income tax payable by the estate for the calendar year 1920. Blanton had been a member of a partnership trading · under the name of A. Blanton Grocery Company at Marion, N. C., and the interest of his estate in the partnership was continued throughout the period under discussion in this case. The record shows that the taxable year of the individual estate corresponded with the calendar year, while the taxable year of the partnership was computed for the period ending June 30. It is conceded by the parties that such a situation is governed by section 218 (a) of the Revenue Act of 1918 (40 Stat. 1057), and article 322 of Regulations 45 of the Treasury Department, and that in computing the net income of the estate of the deceased for the calendar year, there must be included his distributive share, whether distributed or not, of the net income of the partnership for the period ending June 30, 1920. The books of the partnership were closed in the usual manner on June 30, 1920, and there was credited to the capital account of the estate earnings or profits amounting to $48,746.51. The second half of the year 1920 was disastrous, and on December 31, 1921, a heavy loss, amounting to $88,728.59, was charged to the taxpayer's estate. While it is thus established that the partnership suffered a loss during the calendar year 1920, nevertheless it could be availed of only in the income tax return of the taxpayer for the calendar year 1921.

The taxpayer seeks relief on the ground that when the partnership accounts were closed on June 30, 1920, items of the inventory were erroneously overvalued or omitted, so that the apparent profits then shown by the books did not actually exist. When the case was heard below, the taxpayer offered to show that the errors alleged fell into two categories: (1) The partnership failed to include in the inventory certain Java sugar which the partnership had contracted to buy during the months of May and June, 1920, but which was not delivered until later in the year. There was a loss on these goods by reason of a decline in the market after they were bought, and it is claimed that this loss should appear in the statement of June 30, 1920. (2) Divers items of canned goods and other merchandise included in the inventory were erroneously overvalued. The taxpayer claims that, if the errors relied on are corrected, the substantial profit shown by the books as of June 30, 1920, will be materially reduced, if not entirely wiped out.

The Commissioner of Internal Revenue, the respondent in the case, makes the point on this appeal that it is not proper to include the losses on the sugar contracts in the taxable year ending June 30, 1920, on the ground that it appears from the contracts that title to the goods was not acquired by the partnership until after that date, and consequently no loss thereon could have accrued when the statement was made up. But it is not necessary in this case to decide this question, since, as will appear, there is evidence to sustain the finding of the Board that the market value on June 30, 1920, of the goods covered by the sugar contracts was not less than the contract price.

During the months of May, June and July, 1920, the sugar market was in an extraordinary state. Fluctuations were violent and erratic. Prices reached an unusually high level, and it is difficult to determine the precise market value at any given point of time. It is well known that a definite break in the market finally came to pass, but whether it began before or after June 30, 1920, was a controverted issue before the board. The Weekly Statistical Journal, an established publication devoted to the interests of the trade, failed to give the current daily prices between January 1 and August 12, 1920, and indicated the uncertain state of the market by describing the prices during this period as nominal. On August 12, 1920, the published price was given at 16.758 cents per pound.

The taxpayer offered the testimony of a member of the partnership who said that he had 28 years' experience in the purchase and sale of sugar, and that in his opinion the market value on June 30, 1920, of the sugar purchased by the firm was 4 cents per pound. Another wholesale grocer testified that he had bought the highest grade of refined sugar during the entire month of June at 18 cents per pound, and that Java sugar was of an inferior character, having a retail price between 2½ and 3½ cents less than the highest grade. He also said that in his opinion the break in prices occurred about the middle of June, which was followed by a general decline in all prices of merchandise during the latter part of 1920. On the other hand, the records of the taxpayer show that on May 13, 1920, it purchased 1,000 bags of Java sugar at 22 cents per pound, and on May 17, 500 bags at the same price, and that it also bought lots of high grade sugar from the American Sugar Refinery as follows; On June 2, 1920, 100 barrels, at 22½ cents per pound; on June 9, 50 barrels, and on June 26, 30 barrels, of the same goods at the same

price. The evidence also shows that in May, 1920, a large quantity of Argentine sugar was sold at 23 cents per pound and that some jobbers paid as high as 27 cents a pound for sugar during the period under examination.

In this state of the proof, we think there was abundant evidence to support the finding of the board that on June 30, 1920, the Java sugar which the partnership had agreed to purchase was worth not less than the contract price. It is well settled by the courts of this and other circuits that the finding of the board on a question of fact will not be disturbed on appeal, when it finds support in the evidence. Atlantic Coast Distributors v. Commissioner of Internal Revenue, 33 F. (2d) 733, decided by this court on July 1, 1929; Ox Fibre Brush Co. v. Blair (C. C. A.) 32 F.(2d) 42.

The petitioner contends that the rule laid down in these cases has been upset by the decision of Old Colony Trust Co. v. Commissioner of Internal Revenue, 49 S. Ct. 499, 73 L. Ed. 918, decided by the Supreme Court June 3, 1929. But we find nothing in this case to justify the taxpayer's contention. It was there suggested that a proceeding before a Circuit Court of Appeals on a petition to review a decision of the Board of Tax Appeals is not judicial, because it involves no cause or controversy without which a constitutional court is incapable of exercising its judicial function. But the Supreme Court held that this view could not be sustained, and said in the course of the argument that it is not necessary that a proceeding, to be judicial, should be one entirely de novo. From this expression it would seem that, if the case has any bearing on the point under discussion, it tends to sustain rather than upset the rule which the Circuit Courts of Appeals have laid down.

In regard to other items in the inventory of June 30, 1920, the petitioner offered the evidence of a member of the firm to show that the valuations were too high. Before the witness was allowed to express a definite opinion, it was brought out on cross-examination that he had no knowledge of actual sales of the commodities on or about the date in question, or of the prices obtained. His sole source of authority were quotations from certain trade papers which were not produced in evidence. The board refused to accept the opinion of the witness based on this insecure foundation, and we think that this ruling under the circumstances was obviously correct.

The correctness of the board's refusal to permit the taxpayer to revalue the merchandise of the firm is further supported by the failure of the taxpayer to show the basis upon which the inventory for its fiscal year was computed. Section 203 of the Revenue Act of 1918 provides that inventories shall be taken by a taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming to the best accounting practice. Sections 1581 and 1582 of Treasury Regulations 45 require that inventories must be valued either at cost price or at cost or market price, whichever is lower, and that whichever basis is adopted must be applied consistently to the entire inventory. It is obvious that, unless this regulation is followed, the taxable income of a business cannot be ascertained. The evidence fails to show that the inventory compiled by the taxpayer at the beginning of the taxable year ending June 30, 1920, was computed on the basis of market price as distinguished from the basis of cost. It follows that on this ground alone the decision of the Board of Tax Appeals was correct.

The taxpayer further contends that the Board of Tax Appeals erred in assuming and exercising jurisdiction in the case because the Commissioner failed to file an answer to the taxpayer's petition within 60 days after service upon him of copy of the petition. The record shows that the time for the Commissioner's answer to be filed expired July 8, 1927, and that on the preceding day, he filed a motion to be allowed 60 days' additional time within which to file his answer, but failed in said motion to show any cause for the request. The filing of a petition with the board by a taxpayer, together with the time within which the petition must be filed, is regulated by the Revenue Act of 1926, § 274 (a) (b), 44 Stat. 55, 26 USCA §§ 1048, 1048a. There are no statutory provisions requiring the Commissioner to file an answer, but pursuant to the authority granted by Congress in section 900 (h) of the Revenue Act of 1924 (26 USCA § 1219, note), and section 907 (a) of the Revenue Act of 1924, as added by Revenue Act of 1926, § 1000 (26 USCA § 1219), the board has promulgated rules 14 and 20, which give the Commissioner 60 days within which to file an answer, and authorize extensions of time in the discretion of the board, on motion of either party filed in writing, and showing good and sufficient cause therefor. It appears that the Commissioner failed to comply with the provisions of the rule regulating extensions of time. But the petitioner failed to make any objection on this score during the progress of the case before the board. He was notified that the extension was granted. He proceed-

ed with the case on the merits, introduced testimony, and raised no objection as to the validity of the Commissioner's answer or his right to defend the case. We think it is clear, under these circumstances, that he waived any right which he may have had to object to the consideration of the case by the board, and it is now too late in any event to raise the point.

The decision of the Board of Tax Appeals is affirmed.