NIXON v. LUCAS, Commissioner of Internal Revenue (two cases).

Nos. 276, 277.

Circuit Court of Appeals, Second Circuit.

July 7, 1930.

Donald Horne, of Washington, D. C., for petitioners.

G. A. Youngquist, Asst. Atty. Gen., and Helen R. Carloss and Sewall Key, Sp. Asst. Attys. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and John McC. Hudson, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

Wistar, Underhill and Nixon, the petitioner, were partners engaged in selling lumber which they got from various sources. Among these was a company of which in the years in question they owned all the shares, divided equally between the three. This company held stumpage rights upon a tract of lumber under which the partners cut timber and sold it in their business. The company was a mere form used by them for convenience; they were its only directors and alone had power to dispose of the product, but they went through the form of selling in the corporate name, themselves fixing the prices and directing the orders to be filled. As the business was unsuccessful, the company needed funds which the partners advanced, as loans, receiving any profits by way of recoupment. In both the years in question there remained substantial losses, which the partners divided between themselves and claimed as deductions in their income tax returns. Their position was that the company had no actual existence, and that the supposed loans were not such in fact, but contributions by the firm business as a whole to this, a losing, branch. The Commissioner refused to allow the deductions and the Board affirmed the ruling. Nixon filed a petition for each year.

While there are many cases in which a court will hold third persons for legal transactions conducted in a corporate name, in general "in matters of contract, it is impossible to see the men behind." Donnell v. Herring-Hall-Marvin Safe Co., 208 U. S. 267. 273, 28 S. Ct. 288, 289, 52 L. Ed. 481. The exceptions are those in which the persons charged, ignoring the constituted authorities of the corporation, transact the business themselves, though in its name. Costan v. Manila Electric Co., 24 F.(2d) 383 (C. C. A. 2); Kingston Dry Dock Co. v. Lake Champlain Transportation Co., 31 F.(2d) 265 (C. C. A. 2). If on the other hand a legal transaction arises between a company and those who control it, the relations ensuing are the same as between any other persons, if so intended. New York Trust Co. v. Island Oil & Transport Corp. (Ex parte Compania Petrolera Capuchinas) 34 F.(2d) 655 (C. C. A. 2). In the case at bar the partners chose, for some reason not disclosed; to deal with the company as a legal person, which they could do if they wished. Their agreements created contracts with the same obligations as though the company had been an individual. There were no attendant circumstances which show that they were not so intended, as in the case of contracts made as a jest, or only to serve as a blind. The fact that the partners could at any time have taken over the assets and dealt directly with their customers, is not a reason for looking behind the pattern so devised and used. Whatever they might have done, they did what they did.

Indeed, the only thing that gives us pause is the decision of the Supreme Court in Southern Pacific Co. v. Lowe, 247 U. S. 330, 38 S. Ct. 540, 62 L. Ed. 1142, the chief reliance of the petitioner. In that case a tax was declared invalid which had been laid upon a holding company for dividends declared upon a subsidiary's shares, all of which it held, these dividends having been accumulated out of the subsidiary's earnings, made before March 1, 1913. As here, so in that case, the subsidiary had only a formal existence, all its transactions being in fact determined by the parent, which kept it alive for reasons of accounting and the like; though the form was consistently observed, both in the books, and by means of a dummy board of directors. It must be confessed that the parallel is complete, except for the fact that the earnings declared as dividends after March 1, 1913, had all been earned before, and as earnings were beyond the reach of the Sixteenth Amendment (Const.).

The Commissioner in the case at bar presses this distinction, and it might be conclusive, were it not that on the same day the Supreme Court handed down the decision in Lynch v. Hornby, 247 U. S. 339, 38 S. Ct. 543, 62 L. Ed. 1149, in which it held that a shareholder was liable for surtax upon dividends declared after March 1, 1913, which had been earned before. It seems impossible that Southern Pacific Co. v. Lowe, should have gone on a contrary ground, and indeed the court expressly disclaimed any such. Page 336 of 247 U. S., 38 S. Ct. 540, 542. Moreover, at the same time in Lynch v. Turrish, 247 U. S. 221, 38 S. Ct. 537, 62 L. Ed. 1087, it refused to submit the profits of a shareholder to the surtax, when the dividend was in final liquidation of the company, thus distinguishing between such a situation and a dividend in due course.

Ordinarily we should assume that a decision of the Supreme Court, so similar upon the facts, laid down a rule of general application, even though the court itself declared that it turned "upon its very peculiar facts." Page 338 of 247 U. S., 38 S. Ct. 540, 543. Yet we are disposed to regard it as controlling that the relations between the corporations came into being before the passage of the Sixteenth Amendment. The taxpayer had had power to declare the earnings as dividends before there was any tax, and as nothing turned upon the time when it did so, the whole matter being formal in any case, it was safe to assume that its inaction was due to its failure to anticipate the new tax. That gave warrant for ignoring the formal relations between the two. This was not true in Lynch v. Hornby, a case involving a shareholder in an active corporation. There the declaration of a dividend depended on other considerations, and it would have been a forced conclusion to suppose that had the tax been anticipated, the company's action would have been different.

In the case at bar the income tax had been in existence some six years before the partners bought up the shares. While of course it would be preposterous to assume that they foresaw the situation now before us, we may insist that they were charged with notice that the tax might follow the legal pattern which they had chosen for reasons satisfactory to themselves. For these reasons we think that Southern Pacific Co. v. Lowe is not to be taken as authoritative, and that the Board was right.

Decision affirmed.