## DUKE POWER CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 2996.

Circuit Court of Appeals, Fourth Circuit.
Oct. 21, 1930.

J. H. Marion, of Charlotte, N. C. (H. H. Shelton, of Washington, D. C., on the brief), for petitioner.

Randolph C. Shaw, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Allin H. Pierce, Sp.

Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before PARKER, Circuit Judge, and GRONER and ERNEST F. COCHRAN, District Judges.

GRONER, District Judge.

There are two questions involved on this appeal.

The first is this: Where three corporations are affiliated within the meaning of section 240(c) of the Revenue Act of 1921, and the parent corporation has elected to file a separate income tax return, may the two subsidiary corporations file a consolidated return?

The second is: Should interest payments received by one member of the group from another be included in its gross income where the members of the group are required by law to file separate returns?

The Board of Tax Appeals answered the first question in the negative, and the second in the affirmative.

Appellant is the successor of the Southern Power Company, the corporation against which the deficiency in tax here involved was asserted. In the years 1922 and 1923, Wateree Electric Company, Southern Power Company, and Catawba Manufacturing & Electric Power Company were affiliated within the meaning of section 240 of the Revenue Act of 1921. The Wateree Company owned substantially all of the stock of the Southern Company, and the Southern Company owned all of the stock of the Catawba Company. The Wateree Company filed a separate return of its income. The Southern and Catawba Companies filed a consolidated return. The tax in suit results from the disallowance by the commissioner of the filing of a consolidated return by the two last-named companies, and arises out of the fact that during 1922 and 1923 the Southern Company advanced large sums of money to the Catawba Company on open account, and set up against the latter company an interest charge of 6 per cent. per annum, which interest was paid by the Catawba Company out of funds advanced by the Southern Company. The Catawba Company had practically no income, so that the amounts paid by it to the Southern Company as interest represented a deficit for the years in question. By setting off this deficit on account of the interest item against the income accruing to the Southern Company from the same item

in a consolidated return, this intercompany transaction was wiped out, and no taxable income was shown, but this the commissioner disallowed. It follows therefore that if the law permitted the consolidated return, the assessment by the commissioner was unlawful. If it did not, and if the interest accruing and paid to the Southern Company was income, the assessment was in order.

Section 240(a), Act of 1921, chapter 136, 42 Stat. 227, is as follows:

"Corporations which are affiliated within the meaning of this section may, for any taxable year beginning on or after January 1, 1922, make separate returns, or, under regulations prescribed by the Commissioner with the approval of the Secretary, make a consolidated return," etc. etc.

The option to affiliated corporations to file separate returns or a consolidated return included in the act of 1921 was a departure from the law as it existed prior to that time. The Revenue Act of 1918 (section 240(a), 40 Stat. 1057) required that affiliated corporations unite in filing a consolidated return, and the report of the Senate Finance Committee shows that this requirement was thought necessary to prevent evasion under the excess profits tax provisions of the law, and so when the excess profits tax was abolished, the necessity for requiring a consolidated return ceased to exist, and the provisions of the law making it mandatory were not repeated in the 1921 act, but it was realized by Congress that while the mandatory feature of the law should be repealed, the permissive feature should be retained because, instances would arise in which it would be just as unreasonable to require for tax purposes the breaking up of a business operated as a unit, though conducted through several corporations, into as many parts, as it would be for the same purpose to require an individual engaged in two or more businesses to treat each separately, and this upon the theory that unless the affiliated group as a whole earned a profit, those who own and conduct its business would realize no gain, and that the substance rather than the shadow should be the determining factor. On the other hand, it was recognized that the requirement under all circumstances of a consolidated return was a harsh one, and sometimes entailed injustices and inequalities of taxation which only the object sought under the circumstances then obtaining would justify. Hence in the 1921 act, Congress said, in 240(a), affiliated corporations may hereafter make separate returns or

make a consolidated return, and since the language used is plain and unambiguous, our duty is to construe it according to its obvious meaning.

In this view, it seems to us first of all perfectly clear that when Congress in 1918 declared that companies such as those involved in this controversy should file a consolidated return, and should be taxed on a basis of consolidated income, it was well understood that only one return embracing the consolidated income of all was permissible, and so it would seem, by parity of reasoning, that when Congress said in 1921 that affiliated companies, such as these, might file separate returns, or might file a consolidated return, it did no more than restore the right and duty of corporations as these existed prior to the 1918 act, but with an option to adopt instead the method prescribed by the mandatory provisions of the 1918 act. In other words, it permitted a return to the rule obtaining before 1918, under which each and every corporation retained its corporate identity for taxation, but at the same time provided, at the election of affiliated companies, the 1918 method, thus in such cases recognizing and giving effect to the business entity as distinguished from the corporate entity. It assumed that if there was that degree of affiliation which the law required, there was a dominant control, and it gave to that dominant control the right to make the choice. The argument, therefore, that this construction of the law prevents one of the group from making its election, and forces it by the conduct of its associates or its parent to a definite course against its own interest, is untenable for the reason that such an argument destroys the entire premise on which the optional provision is based. A corporation is owned by its shareholders, who are the ultimate source of power controlling its corporate action. If its stockholders decide that its best interests require filing by it of a separate tax return, no provision of the law denies it this privilege, but in that event the effect of its action is to deprive its associates of the benefits, if there are any, of a consolidated return, and imposes upon each the duty of filing a like form of return, but if all the corporations affiliated be owned by the same interests, and that of course is the presumption on which the right is made to rest, it is fair to assume that they will act harmon-iously and for the interest of the common owner, and it is the recognition of this common owner's right to set off against his gains in the one his losses in the other that induced the permitted consolidated return.

In the case at hand, the Catawba Company is owned by Southern Company, and if all else be disregarded, the two would come within the provisions permitting a consolidated return, but equally as the Southern Company owned Catawba, Wateree owned Southern, and this ultimate ownership and control is the factor Congress had in mind in permitting consolidation of income for taxation. The intermediate ownership, therefore, is a mere incident, and may no more be taken as the criterion on which to apply the 1921 law than it would have been under the 1918 law, and under that law, it was never suggested, so far as we know, by any one that the affiliation intended to be reached was less than the whole. This, it seems to us, is the clear and unmistakable import of the language used by Congress when considered in the light of the purpose which it is obvious Congress intended to accomplish, and that purpose, as we have seen, was to afford to affiliated corporations two methods of returning income for taxation. The extension to a third method would be to read into the act something not justified by the language itself, or the historical continuity of the subject involved, and this obviously we may not do. Likewise, we think section 141(a) of the Revenue Act of 1928 (26 USCA § 2141(a), in which Congress specifically made the election to file a consolidated return depend upon the consent of all affiliated corporations, is not indicative of a change of policy in this regard, but should be construed rather as a direct approval of the administrative construction of the Bureau, which since 1924 has been consistently against the right asserted here.

The second query may be answered in a few words. The Southern Company, having no legal right to consolidate its income account with Catawba Company, is chargeable with the payment of a tax on whatever income it received, and returned. Interest, by the very terms of the act, is made income, and is taxable.

The decision of the Board of Tax Appeals in sustaining the action of the Commissioner must therefore be, and is, affirmed.

Affirmed.