AMERICAN SAV. BANK & TRUST CO. v. BURNET, Commissioner of Internal Revenue.

No. 6220.

Circuit Court of Appeals, Ninth Circuit.

Dec. 6, 1930.

James H. Kane, of Seattle, Wash., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Andrew D. Sharpe, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, and Frank M. Thompson, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before RUDKIN and WILBUR, Circuit Judges, and NORCROSS, District Judge.

WILBUR, Circuit Judge.

The petitioner, in its income tax return for the year 1920, claims a deduction of $30,000 on account of the depreciated value of a debt. The Commissioner denied this allowance on the ground that the debt of $70,000 was ascertained to be worthless to the extent of $30,000 in the previous taxable year, 1919. The Board of Tax Appeals found the facts in accordance with the stipulation of the parties, and, from the facts stipulated and from the oral evidence, deduced the conclusion that the debt was ascertained to be worthless to the extent of $30,000 in 1919. The facts found and stipulated are substantially as follows:

In 1915 petitioner loaned the Bremerton Gas Company and the Montesano Gas Company, both public service corporations organized under the laws of the state of Washington, the sum of $70,000, $45,000 to the former and $25,000 to the latter. These notes were secured by bonds written by the Illinois Surety Company. In 1916 the two gas companies went into the hands of a receiver. Shortly thereafter the Illinois Surety Company, after refusing to pay the notes, also went into the hands of a receiver. Petitioner obtained judgment against these three companies in 1916 in the state of Washington. An appeal was taken to the Supreme Court of the state of Washington. 168 P. 775. On April 17, 1918, judgment was again rendered after remand in favor of the petitioner. No recovery was had on this judgment and no assets were found available. Suit was instituted by petitioner in Illinois courts against the receiver of the surety company. The trial court there held the bonds were void. In 1924 the Illinois Court of Appeals affirmed this judgment, which was reversed in December, 1925, by the Supreme Court of Illinois. As a result of this latter ruling, the petitioner, in December, 1926, recovered 20 per cent.

of its claims, or $14,404.02. In 1918 the petitioner, under the directions of the department of banking of the state of Washington, wrote off $25,000 of its claim as uncollectible and in 1920 wrote off an additional $30,000. The president and chairman of petitioner's board of directors testified that they presented petitioner's claim against the Illinois Surety Company to the court in the bankruptcy proceedings in 1919; that they then learned that all the assets of that corporation had been converted into cash and that a dividend of 20 per cent. had been paid on all allowed claims; that 20 per cent. of the petitioner's claim had been impounded by the court to apply on petitioner's claim in the event that its claim was ascertained to be valid; that they then ascertained that there was little probability of securing any more; that the debt was a bad debt and lost, so far as the rules of banking were concerned; that they had no hope of recovering more than 20 per cent. thereof; and that this fact was determined in 1919. The Commissioner, in the first instance, determined the facts against the petitioner, and the Board of Tax Appeals found as a fact that the petitioner ascertained in 1919 that its debt over and above 20 per cent. was worthless, and held, as a conclusion of law therefrom, that the petitioner could not take a deduction in a subsequent year (1920), in which it was charged off as a bad debt.

■■ It must be conceded that there was substantial evidence to support the ultimate finding of fact by the Board of Tax Appeals that the taxpayer in fact ascertained the debt to be worthless, in 1919, as to all in excess of 20 per cent. This finding of fact is binding upon this court under the construction of the statute (26 USCA § 1226), giving this court jurisdiction to review the decisions of the Board of Tax Appeals. From C. C. A. 1: Blair v. Curran, 24 F.(2d) 390; De Ford v. Comm'r, 29 F.(2d) 532, 533; Comm'r of Int. Rev. v. Crescent Leather Co., 40 F.(2d) 833, 835. C. C. A. 2: Bedell v. Comm'r, 30 F.(2d) 622, 625; Luscomb v. Comm'r, 30 F.(2d) 818. C. C. A. 3: Bishoff v. Comm'r, 27 F.(2d) 91, 92. C. C. A. 4: Ox Fibre Brush Co. v. Blair, 32 F.(2d) 42, 45, 68 A. L. R. 696; Atlantic Coast Distributors v. Comm'r, 33 F.(2d) 733, 737; Guy v. Comm'r, 35 F.(2d) 139, 141; House & Herrmann, Inc. v. Lucas, 36 F.(2d) 51; Anchor Co., Inc. v. Comm'r, 42 F.(2d) 99. C. C. A. 5: Avery v. Comm'r, 22 F.(2d) 6, 55 A. L. R. 1277; Brown v. Comm'r, 22 F.(2d) 797; Jefferson Planting & Mfg. Co., Ltd. v. Comm'r, 31 F.(2d) 753, 754; E. G. Robichaux Co., Ltd. v. Comm'r, 32 F.(2d) 780, 781; Burns et al. v. Comm'r, 31 F.(2d) 399. C. C. A. 8: Feeders' Supply Co. v. Comm'r, 31 F.(2d) 274, 278; Mastin v. Comm'r, 28 F.(2d) 748, 751; Denver Live Stock Com. Co. v. Comm'r, 29 F.(2d) 543, 544; Kendrick Coal & Dock Co. v. Comm'r, 29 F.(2d) 559; Conklin-Zonne-Loomis Co. v. Comm'r, 29 F.(2d) 698, 700; Burkett v. Comm'r, 31 F.(2d) 667, 669; St. Paul Abstract Co. v. Comm'r, 32 F.(2d) 225; Twin City Tile & Marble Co. v. Comm'r, 32 F.(2d) 229; Powers Mfg. Co. v. Comm'r, 34 F.(2d) 255; Franciscus Realty Co. v. Comm'r, 39 F.(2d) 583, 584; Edson v. Lucas, Comm'r, 40 F. (2d) 398, 403, 404. C. C. A. 6: Collin v. Comm'r, 32 F.(2d) 753, 754. C. C. A. 9: Royal Packing Co. v. Comm'r, 22 F.(2d) 536. C. C. A. 10: Prey Bros. Live Stock Com. Co. v. Comm'r, 36 F.(2d) 326. Ct. of Appeals, Dist. of Col.: Henderson Iron Works v. Blair, 58 App. D. C. 114, 25 F.(2d) 538; Geo. Feick & Sons Co. v. Blair, 58 App. D. C. 168, 26 F.(2d) 540, 542; Brown Lbr. Co. v. Comm'r, 59 App. D. C. 110, 35 F.(2d) 880.

■ The contention of the petitioner may be summed up in the following quotation from its brief: "Counsel for the respondent contend that this $30,000 should have been charged off in 1919. This is absolutely immaterial, because the statute only requires that the debt must have been ascertained to be worthless, and not that it must have been ascertained to be worthless in the taxable year."

We think that the Board of Tax Appeals was right in its construction of the law (Revenue Act 1918, 40 Stat. 1057, 1078, § 234(a), (5), permitting a deduction from the gross income of a taxpayer of "debts ascertained to be worthless and charged off within the taxable year." The statute requires as a prerequisite to such an allowance that it shall be charged off within the taxable year in which it is ascertained to be worthless. The regulations of the Treasury Department promulgated under the Revenue Act of 1918 so provide as follows: "*Bad Debts.* An account merely written down, or a debt recognized as worthless prior to the beginning of the taxable year is not deductible. * * *" Regulations 45, art. 151. The debt in question was "recognized" or "ascertained" by the taxpayer to be worthless pro tanto in the year 1919, and prior to the taxable year 1920 in which it was claimed as a deduction. Ordinarily it would be difficult to say that a taxpayer was acting unreasonably in deferring

the writing off a part of a debt where the whole debt is not worthless, but in the case at bar we have an accurate measurement of the extent to which the indebtedness was worthless, and no point is made upon the propriety of considering this part of the debt as covered by section 234(a)(5) of the Revenue Act of 1918 (40 Stat. 1057, 1078), permitting bad debts to be deducted from income.

Order affirmed.