## LUDLOW VALVE MFG. CO. v. DUREY.
### No. 156.

Circuit Court of Appeals, Second Circuit.
Jan. 9, 1933.

Guggenheimer & Untermyer, of New York City (Eugene Untermyer, Edward M. Bratter, and L. Arnold Weissberger, all of New York City, of counsel), for appellant.

Oliver D. Burden, U. S. Atty., of Syracuse, N. Y. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, Wright Matthews and Warren W. Cole, Sp. Attys., Bureau of Internal Revenue, all of Washington, D. C., of counsel), for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

On June 30, 1925, the plaintiff paid under protest to the defendant, as collector, income and profits taxes for the calendar year 1918, filed a claim for refund on December 24, 1925, which was rejected June 30, 1926, and then brought this suit. After hearing by the court, a jury having been waived, the complaint was dismissed on the merits. See (D. C.) 57 F.(2d) 583.

In 1905 and 1906 the plaintiff purchased all the outstanding shares of the Sturgess Governor Engineering Company at a cost of $94,500. It continued to own all these shares so long as the Sturgess Company existed. After its stock had been acquired by the plaintiff, the Sturgess Company was not financially successful, and the investment of the plaintiff in its stock was charged off to the amount of $20,000 in 1907, to the amount of $10,000 each year from 1909 to 1914, inclusive, and to the amount of $14,499 in 1915. After the last charge-off was made, the investment was carried on the books of the plaintiff at the nominal sum of $1. No deductions were taken on the income tax returns of the plaintiff for the 1913, 1914, or 1915 write-offs. Beginning in 1906 and continuing into 1918, the plaintiff advanced money each year to the Sturgess Company. The total of such advances is $111,034.92.

On March 17, 1919, the plaintiff filed a tentative tax return for the year ending December 31, 1918, which showed an estimated tax of $77,800, and then paid the defendant $19,450 on account of such tax. On May 31, 1919, the plaintiff filed a completed return for the same period which showed a tax of only $3,231.26, and later filed a claim for refund of $16,218.74, the difference between what it had paid and the amount shown to be due on its completed return. The claim for refund was allowed and the amount paid the plaintiff January 12, 1920. Upon audit and review thereafter by the Commissioner of Internal Revenue, a deficiency assessment was made against the plaintiff which was twice corrected by being reduced and finally became fixed at the sum of $60,892.61. The plaintiff paid $4,978.09 of this to the defendant on April 29, 1922, and the remainder, $55,914.52, under protest as already stated. This last payment is the one which the plaintiff sought to recover in this suit.

The basis of its claimed right to recover is that in 1918 the Sturgess Company ceased doing business; that the plaintiff in February of that year took over all of its assets at their fair value of $21,435.40, and thereby Sturgess was liquidated and affiliation ceased, so that 1918 was the first year in which the plaintiff could ascertain and deduct from its income the loss it sustained on its stock in the Sturgess Company and on the advances it had made to it.

The date when the Sturgess Company was liquidated and ceased doing business was disputed. It was found by the trial court on conflicting evidence that the Sturgess Company continued to transact some business throughout 1918, and that the affiliation of these two corporations was not terminated before 1919.

The plaintiff claimed the March 1, 1913, value of its stock in the Sturgess Company to be $34,500, as then shown by the plaintiff's

books, and that it was entitled to take this as a deduction on its 1918 return. It also claimed as a deduction on that return the difference between the sum of the advances it had made the Sturgess Company, $111,034.-92, and the 1918 asset value of Sturgess, $21,-435.40, or $89,515.13. The correctness of the disallowance of these two claims for deduction presents the issues now to be determined.

■ The trial court found on evidence which amply supports the finding that the stock of the Sturgess Company was worthless on March 1, 1913. The fact that the plaintiff then carried that stock on its books at $34,500 was properly made to yield to the fact that no asset value in excess of the Sturgess Company's debts at that time was proved. And its debts then owed to the plaintiff alone were more than three-quarters of all the advances the plaintiff ever made it. This finding requires the disallowance of the claim for deduction on account of loss on the stock regardless of any dispute as to when such a loss could be taken, for there was no loss to take as a deduction at any time after March 1, 1913. United States v. Flannery et al., 268 U. S. 98, 45 S. Ct. 420, 69 L. Ed. 865.

■ As to the deduction claimed in 1918 on account of loss on the advances made, we do not find it necessary to put anything upon the disputed contention that the Sturgess Company ceased doing business and was finally liquidated in 1918 by the petitioner's taking over all its assets for which payment was made by a book credit of $21,435.50. Let whether the final liquidation took place in 1918 and affiliation ceased then or later be as it may. For the purposes of this appeal it does not make any difference.

The statute relating to the deduction of debts which is applicable is section 234 (a) (5) of the Revenue Act of 1918 (40 Stat. 1077). As far as material, it provided for the deduction of "(5) Debts ascertained to be worthless and charged off within the taxable year."

It is undisputed that in 1915 the plaintiff wrote off on its books $45,501 of the amount it had then advanced the Sturgess Company and in 1916 wrote off $50,460.21 more of this amount. When the sum of these two write-offs is deducted from the total amount advanced, it is seen that there was only $15,173.-71 which was left to be charged off in 1918. Even if no account is taken of the possibility that so much of these advances as had been made before March 1, 1913, were not worth their face value on that date and that those made afterwards were never worth so much, the admitted value of the assets of Sturgess which the plaintiff received in 1918 exceeded the remainder, after the 1915 and 1916 write-offs, of all the advances it made.

Presumably so much of these debts as were charged off in 1915 and 1916 were ascertained to be worthless in those years, else they would not then have been written off, but we merely suggest that. The important fact is that, having previously been charged off, they could not be written off again in 1918. Darling v. Commissioner (C. C. A.) 49 F.(2d) 111; Avery v. Commissioner (C. C. A.) 22 F.(2d) 6, 55 A. L. R. 1277; Stephenson v. Commissioner (C. C. A.) 43 F. (2d) 348. To permit that would leave a taxpayer free to charge off bad debts whenever they were ascertained to be worthless and the exigencies of his business required the entry and to let him take the deduction then or in a later year as he preferred. This would give him the opportunity to wait before claiming the deduction until there should be a year in which his income would be sufficient to allow him the maximum benefit, instead of taking it as the statute required in the year when the debts were both ascertained to be worthless and charged off. As all that could possibly be charged off in 1918 was less than the credit in that year for the assets taken over, there was nothing left to take as a deduction.

Judgment affirmed.