## AMERICAN CIGAR CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 127.

Circuit Court of Appeals, Second Circuit.

July 25, 1933.

Robert H. Montgomery, of Washington, D. C. (Thomas G. Haight, of Jersey City, N. J., J. Marvin Haynes, of Washington, D. C., and James O. Wynn, Jr., of New York City, of counsel), for petitioner.

Sewall Key and John H. McEvers, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and John D. Foley, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for the respondent.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The petitioner was incorporated under the laws of New Jersey in 1901. Soon after its incorporation, it acquired the stock of several Cuban tobacco companies, including all the stock of a corporation known as H. de Cabanas y Carbajal. In 1902 the petitioner and others formed a new corporation in New Jersey called the Havana Tobacco Company.

The petitioner then transferred to the Havana Company all its stock in H. de Cabanas y Carbajal, and received in return $3,500,000 in bonds of the Havana Company, as well as a large fraction of its common stock and a small amount of cash. The total outstanding bond issue of the Havana Company amounted to $7,500,000.

The Havana Company immediately started to manufacture and sell Cuban cigars, and for a time its operations were successful. Subsequently, however, its business declined severely, and by 1909 it was in very poor financial condition. Its only income consisted of dividends on the stock of its subsidiary companies, and these dividends were not sufficient to pay the interest on its bonds.

The petitioner and other companies allied in interest apparently were very reluctant to allow the Havana Company to go into receivership, and accordingly the petitioner from time to time advanced money to the Havana Company to enable the latter to meet its operating expenses and pay the interest on its bonds. The petitioner accepted interest-bearing notes of the Havana Company covering these loans. By January 1, 1918, the net advances totaled $11,640,123.20. From this date, through 1921, the following additional sums were advanced:

| Year | Amount |
|---|---|
| 1918 | $2,048,000.00 |
| 1919 | 787,000.00 |
| 1920 | 2,723,500.00 |
| 1921 | 3,129,000.00 |
| Total | $8,687,500.00 |

During the same years repayments were made in the following amounts:

| Year | Amount |
|---|---|
| 1918 | $1,169,500.00 |
| 1919 | 1,135,000.00 |
| 1920 | 2,056,000.00 |
| 1921 | 2,495,500.00 |
| Total | $6,856,000.00 |

Thus, during the taxable years in question, the net advances made by the petitioner to the Havana Company totaled $1,831,500, and on December 31, 1921, the total balance due was $13,471,623.20. Out of these advances, from 1908 to July, 1921, the Havana Company paid the interest on the $3,500,000 of bonds held by the petitioner. During the years 1918 to 1921 interest accrued on these bonds as follows:

| Year | Amount |
|---|---|
| 1918 | $222,645.83 |
| 1919 | 222,250.00 |
| 1920 | 227,066.67 |
| 1921 | 214,387.50 |

All of the interest accruing in 1918, 1919, and 1920 was paid out of the funds advanced by the petitioner, and installments coming due during the first part of 1921 amounting to $95,937.50 were similarly paid. In December, 1921, the petitioner refused to make further advances to the Havana Company, and interest on the bonds in the amount of $118,450, falling due in that month, was not paid.

The petitioner never returned as part of its gross income the interest received on these bonds. In auditing the returns for the years 1918, through 1921, the Commissioner determined that all interest accruing on the bonds during these years, including the installment accruing in December, 1921, which was not paid, should be included in the gross income. The Commissioner allowed the unpaid installment for 1921 to be deducted from the gross income as a bad debt. The Board of Tax Appeals sustained the action of the Commissioner, except that they held that the unpaid installment for December, 1921, should not have been included in the gross income. This change in the theory of computation did not affect the net result.

The contention of the petitioner on this appeal is that none of the interest received from the Havana Company during the years in question should be included in the gross income, because all of this interest was paid out of funds advanced by the petitioner itself. In the alternative, the petitioner seeks permission to deduct, as debts ascertained to be worthless and charged off within the taxable year (Revenue Acts of 1918 and 1921, § 234 (a) (5) 40 Stat. 1077 and 42 Stat. 254, 26 U. S. C. § 986 (a) (5), the advances made to the Havana Company, to the extent to which these advances were used to pay interest on the bonds held by the petitioner.

We think that the petitioner's first contention is clearly without merit. The petitioner kept its books on the accrual basis. The coupons representing interest payable on the bonds matured during the taxable years in question. If the coupons had not been paid, that fact alone would not justify a failure to return their face amount in the gross income, as long as the accrual basis was used. It may be that an obligation which is worthless and uncollectible when it matures need not be returned as income, even where the obligee's books are kept on the accrual basis. Corn Exchange Bank v. United States (C. C. A.) 37 F.(2d) 34; Turners Falls Power & Electric Co. v. Commissioner of Internal Revenue, 15 B. T. A. 983; Northwestern Im-

provement Co. v. Commissioner of Internal Revenue, 14 B. T. A. 79; Great Northern Railway Co. v. Commissioner of Internal Revenue, 8 B. T. A. 225. But these decisions are of no help to the petitioner, for the coupons, far from being uncollectible, were paid in full. The fact that the coupons were paid out of advances made by the petitioner cannot alter the result. Duke Power Co. v. Commissioner of Internal Revenue (C. C. A.) 44 F.(2d) 543, affirming Southern Power Co. v. Commissioner of Internal Revenue, 17 B. T. A. 962. Perhaps the petitioner might have escaped taxation had it loaned the Havana Company only enough money to meet its operating expenses and pay interest on the bonds held by others than the petitioner. Had this been the case, the coupons held by the petitioner would not have been paid, and if, as the Board found, the obligation they represented was worthless and uncollectible, the face of the coupons might not have been returnable in the gross income. But, for its own reasons, the petitioner deliberately put it within the power of the Havana Company to pay the coupons. What it might have done cannot alter the legal effect of what it did do. Cf. Nixon v. Lucas (C. C. A.) 42 F.(2d) 833, 834. Thus there were two distinct obligations. One arose when the petitioner *acquired the bonds* of the Havana Company; the other when it *made the advances* out of which interest on the bonds was paid. The interest payments were part of a loan transaction arising out of the purchase of bonds which preceded and was entirely distinct from the subsequent loans for which notes were taken. The source from which the Havana Company obtained funds with which to pay the coupons cannot alter the character of the interest payments as income to the petitioner. To hold that the interest payments were deductible merely because made out of loans from the petitioner would be in effect to hold the loans pro tanto deductible. Whether the loans were properly deductible is a distinct question which we shall now consider.

■ The Commissioner contests the deductibility of the advances made by the petitioner to the Havana Company during the taxable years in question on several grounds. It will not be necessary to discuss all of these contentions, for we are satisfied that, for the following reasons at least, the Board properly refused to allow the deductions:

The taxpayer takes the position that the notes taken on account of the advances were ascertained to be worthless at the very time the advances were made. The Board has found as a fact that the petitioner made the advances fully believing that the obligations they created were worthless and uncollectible, and there is evidence to support such a finding. Therefore, according to the petitioner's own contention and the finding of the Board, these sums were advanced in the belief that they would never be repaid, and the notes which the petitioner took were believed to be uncollectible. Such advances, made with the belief they would not be repaid, are in the nature of gifts, and are not deductible as bad debts. Hayes v. Commissioner of Internal Revenue, 17 B. T. A. 86. See Shiman v. Commissioner of Internal Revenue (C. C. A.) 60 F.(2d) 65, at page 66. The advances were in reality contributions to the capital of the Havana Company, in which the petitioner was a stockholder. Contributions to capital cannot be deducted as debts ascertained to be worthless. Olds v. Commissioner of Internal Revenue, 18 B. T. A. 1215; Floyd v. Commissioner of Internal Revenue, 11 B. T. A. 903. Cf. Burns v. Commissioner of Internal Revenue (C. C. A.) 31 F.(2d) 399; United States v. Oregon-Washington R. & Nav. Co. (C. C. A.) 251 F. 211.

■ But there is a further reason for not allowing the deduction. In order to secure a deduction of a debt as worthless, a taxpayer must ascertain its worthlessness, charge it off on his books, and take his deduction all during the same taxable year. Ludlow Valve Mfg. Co. v. Durey (C. C. A.) 62 F.(2d) 508; Continental Pipe Mfg. Co. v. Poe (C. C. A.) 59 F.(2d) 694; Cross v. Commissioner of Internal Revenue (C. C. A.) 54 F.(2d) 781; American Sav. Bank & Trust Co. v. Burnet (C. C. A.) 45 F.(2d) 548. There is no satisfactory proof that the taxpayer did this. The credits on the books of the items of interest received to the account "Interest in suspense" were entries of uncertain meaning, indicating rather *doubtful* items than debts charged off after having been ascertained to be worthless, and accordingly did not satisfy the requirement of section 234 (a) (5) of the Revenue Act of 1918. Shiman v. Commissioner (C. C. A.) 60 F.(2d) 65. The entries showed no intent to treat the items as worthless debts.

Therefore, whether the Board's finding that the advances were made in the belief that they gave rise to no valuable or collectible obligation is sustained by the evidence or not, the petitioner is in the same position. The petitioner claims these debts were known to be worthless when they arose. If so, as we have held, they were nondeductible. If not,

there is no evidence when they were ascertained to be worthless, and there would be no way to determine the years in which the deductions might be allowable, nor is there satisfactory proof that they were ever charged off.

Order affirmed.

L. HAND, Circuit Judge, concurs in a separate opinion.

L. HAND, Circuit Judge (concurring).

I find it impossible to say that money given by a creditor to his debtor for the purpose of paying the debt to him, is income of the creditor. This must certainly be true when the creditor's books are on a cash basis. When they are on an accrual basis, I should be prepared to say that the debtor's recognized necessity of getting a gift, not a loan, to discharge his debt was evidence of its worthlessness and charge off. In substance the transaction is a cancellation of the debt. But I do not think that the petitioner's loan to the Havana Cigar Company was a gift. To be sure it did not expect to be paid, but it did expect to have a corresponding legal claim against the borrower, which apparently it used in a later reorganization. This precludes the notion of a gift and it is irrelevant I think that as things stood the lender knew that the loan could never be repaid in full. I agree that in these circumstances the coupons falling due were income, the petitioner's books being on an accrual basis. They had not been charged off during the year; I also agree that to put items in a "suspense account" is not to charge them off as worthless. The purpose is to leave them ambiguous for a season; when their disposition is eventually decided, they will appear in their proper place, probably as worthless; but the present meaning is to delay that determination for the time being.

I find it rather hard to reconcile Corn Exchange Bank v. U. S., 37 F.(2d) 34 (C. C. A. 2), with this conclusion. However, the majority of the court appears to have there regarded the coupons as worthless. Here they were not; neither were the notes which raised the money to pay them. Indeed, in form, anyway, the coupons were paid. In substance, the transaction may be regarded as this; the petitioner did not think the coupons wholly worthless and reserved the question of their value for the future. It could secure the counter-charge only when it definitively valued them as partially, or wholly, worthless. Till then its power was suspended.