Florence M. Redelsheimer v. Commissioner.
Redelsheimer v. Commissioner
Docket No. 90524.
United States Tax Court
T.C. Memo 1964-60; 1964 Tax Ct. Memo LEXIS 272; 23 T.C.M. (CCH) 427; T.C.M. (RIA) 64060; March 12, 1964
Quentin L. Householder, Stahlman Bldg., Nashville, Tenn., and Richard H. Frank, Jr., for the petitioner. William F. Franklin, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1958 in the amount of $2,755.92. Two issues have been conceded *273 by the parties. The remaining issue is whether the petitioner is entitled to any deduction in 1958 for an alleged loss arising out of her transfer of certain real estate to her former husband in 1953. Findings of Fact Some of the facts and exhibits have been stipulated and are found accordingly. Florence M. Redelsheimer (herein called petitioner) is an unmarried person who resides in Nashville, Tennessee. She filed her Federal income tax return for the year 1958 with the district director of internal revenue at Nashville, Tennessee. On July 21, 1949, the petitioner married James T. Benn and was divorced from him on March 30, 1951. She remarried Benn on November 28, 1951, and was again divorced from him on October 10, 1952. From 1942 to December 12, 1952, the petitioner was at all times the owner of certain real property, known as the Stonesthrow Apartments, which was acquired at a cost of $12,000. After purchasing the property, the petitioner had it remodeled and then rented the apartments. On December 18, 1952, the petitioner conveyed the Stonesthrow Apartments to Benn for a stated consideration of $37,500, paid by promissory note. On December 22, 1952, Benn conveyed the *274 property back to petitioner and the promissory note was cancelled. Both deeds were recorded. On February 25, 1953, the petitioner again conveyed the Stonesthrow property to Benn for a stated consideration of $37,500 represented by a separate promissory note dated February 25, 1953. Benn rendered this note nonnegotiable by deleting the words "the order of" and by adding the words "Subject to any claims or offsets by the payor against the payee" on the reverse side of the note. This deed of conveyance was recorded. On April 17, 1953, the petitioner executed another warranty deed conveying the Stonesthrow property to Benn for a stated consideration of $37,500, receipt of which was acknowledged by the petitioner in the deed. This deed was also recorded. Thereafter, on April 28, 1953, Benn sold and conveyed the property to Percie W. Lea and Mary T. Mallison for recited consideration of $37,500. On May 28, 1953, the petitioner filed an action in the Chancery Court of Davidson County, Tennessee, seeking the recovery of said property and a tract known as the Donelson property. In his Decree of August 29, 1955, Chancellor William J. Wade stated, in part, as follows: By reason of the *275 conveyance from the complainant to Benn, and especially the one of April 17, 1953, said complainant had on April 28, 1953, and prior thereto, transferred to Benn the legal title to the Stonesthrow Apartment property and had clothed him with all the indicia of ownership, as the true and lawful owner of said property. * * *
While there is conflicting evidence in the record as to whether or not the deed to the Stonesthrow Apartment from complainant to Benn of April 17, 1953, was executed and acknowledged on said date, there is no conflicting testimony, nor is there the slightest doubt in the Court's mind but that the complainant's genuine signature appears on said deed. No explanation is offered by her as to when or why she signed said deed or how it got into the possession of Benn. In view of the intimate relationship which existed between the complainant and the said Benn, the various transfers of properties between the two, the signing of said deed of April 17, 1953, coveyed the apartment house to Benn, in fee simple, and the secret agreement between complainant and Benn, the Court is of the opinion and so finds that said complainant, by her acts above outlined, made it possible *276 for Benn to deal with said real estate as though it were his own, * * * The complainant knew, or should have known, Benn better than anyone else, she having been married to him twice. With the intimate knowledge she had of Benn, she had sufficient confidence and trust in him to turn over to him in fee simple valuable real estate. * * * The Court is of the opinion that it would be inequitable and a complete miscarriage of justice to permit the complainant to recover the Stonesthrow Apartment from the defendants, Mrs. Lea and Mrs. Mallison, when, as hereinbefore found and stated, the latter two were innocent purchasers of said property for a fair and valuable consideration, and acted throughout the transaction in entire good faith, and without any notice or knowledge at the time of the purchase, or prior thereto, of any equities of complainant therein. The decision of the Chancery Court was affirmed by the Tennessee Court of Appeals in September 1956 and by the Supreme Court of Tennessee in March 1958. From 1948 through 1951 the petitioner made various loans to Benn which were never repaid. Benn was insolvent at all times between 1952 and 1958 and the petitioner had full knowledge *277 of this. Petitioner had no expectation that the promissory note executed By Benn on February 25, 1953, would ever be repaid in whole or in part. Benn never made any payments to petitioner on the note. Nor did petitioner ever make any attempt to collect on the note. Ultimate Findings 1. No valid debt was created between petitioner and James T. Benn by the execution of the promissory note dated February 25, 1953, in the amount of $37,500. 2. Petitioner did not suffer any deductible loss in 1958 in connection with her voluntary conveyance of the Stonesthrow property to James T. Benn. Opinion Petitioner contends she is entitled to a bad debt deduction in 1958 because that was when the promissory note given to her by Benn became worthless; or, alternatively, that she suffered a loss which is deductible under the provisions of section 165(c) and section 1231(a), Internal Revenue Code of 1954. [1] Respondent counters with the assertion that no valid debt was created and that "the claimed loss is not of a type that is deductible in any year." We agree with the respondent. *278 Whether a bona fide indebtedness existed in a question of fact. Gooding Amusement Co., 23 T.C. 408, 418 (1954), affd. 236 F. 2d 159 (C.A. 6, 1956), certiorari denied 352 U.S. 1031 (1957). Moreover, we are not hesitant to closely scrutinize a transaction and demand persuasive evidence of its reality or bona fides. See, e.g., Warren Brekke, 40 T.C. 789 (1963); David L. Leib, 40 T.C. 161 (1963); and Cart Shapiro, 40 T.C. 34 (1963). In our judgment the evidence contained in this record clearly shows that neither the petitioner nor Benn [2] ever intended to create a genuine debt. The promissory note was worthless from the moment Benn gave it to the petitioner and she knew it. We are convinced that what we have here can be characterized as a phantom promissory note and a phantom debt. And, absent any proof of duress or wrongful appropriation, we are equally convinced that the petitioner conveyed the Stonesthrow property to Benn by her own voluntary act. The facts show that the petitioner parted with the property without any strings attached, and will not support any claim that it was transferred by petitioner *279 to Benn as a loan. Since we have found as a fact that no valid debt was created, it follows that the petitioner is not entitled to a bad debt deduction in any year. See American Cigar Co. v. Commissioner, 66 F. 2d 425, 427 (C.A. 2, 1933), affirming 21 B.T.A. 464 (1930), certiorari denied 290 U.S. 699. In substance the petitioner simply made a voluntary conveyance of the property without charge to Benn which can in no way supply the basis for the deduction of a loss under the provisions of either section 165(c) or section 1231(a). Cf. Balch v. Commissioner, 129 F. 2d 472 (C.A. 6, 1942); and Dresser v. United States, 55 F. 2d 499, 510 (Ct. Cls., 1932). Even if we were to assume that the petitioner suffered a loss, she has not brought her claim for a deduction within the provisions of these sections of the law. She has failed to prove that (1) the property in question was used in a trade or business, (2) that the transaction was one entered into for profit, or (3) that the property was taken from her by theft. *280 Accordingly, Decision will be entered for the respondent. Footnotes
1. SEC. 165. LOSSES. (c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (2) shall be limited to - (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck or other casualty, or from theft. No loss described in this paragraph shall be allowed if, at the time of the filing of the return, such loss has been claimed for estate tax purposes in the estate tax return. SEC. 1231. PROPERTY USED IN THE TRADE OR BUSINESS AND INVOLUNTARY CONVERSIONS. (a) General Rule. - If, during the taxable year, the recognized gains on sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. For purposes of this subsection - (1) in determining under this subsection whether gains exceed losses, the gains described therein shall be included only if and to the extent taken into account in computing gross income and the losses described therein shall be included only if and to the extent taken into account in computing taxable income, except that section 1211 shall not apply; and (2) losses upon the destruction, in whole or in part, theft or seizure, or requisition or condemnation of property used in the trade or business or capital assets held for more than 6 months shall be considered losses from a compulsory or involuntary conversion. In the case of any property used in the trade or business and of any capital asset held for more than 6 months and held for the production of income, this subsection shall not apply to any loss, in respect of which the taxpayer is not compensated for by insurance in any amount, arising from fire, storm, shipwreck, or other casualty, or from theft.↩
2. See our Findings of Fact in the case of James T. Benn, T.C. Memo. 1963-151↩, at page 19.