## In re GERMAN–AMERICAN IMPROVEMENT CO.

(District Court, E. D. New York. August 27, 1923.)

1. **Limitation of actions** ⟝48(2)—**Limitations commence to run as of date of demand note.**

Limitations commence to run as of date of demand note.

2. **Bankruptcy** ⟝166(3) — **Interest payments, with knowledge and intent to prefer, held illegal, under New York Stock Corporation Law.**

Insolvent corporation's payments of interest on note, with knowledge of insolvency and intent to prefer on part of both corporation and creditor, *held* illegal, under Stock Corporation Law N. Y. § 66, and a recoverable preference.

3. **Bankruptcy** ⟝314(4) — **Insolvent corporation's payments of interest on note, constituting unlawful preference, held not to stay running of statute of limitations against note.**

Insolvent corporation's payments of interest on note, when both it and creditor knew of its insolvency and that such payments constituted unlawful preference, *held* insufficient, under Civil Practice Act, § 59, to stay running of limitations against note, so as to keep it alive as valid claim, provable in subsequent voluntary proceedings in bankruptcy.

4. **Bankruptcy** ⟝186(1) — **Insolvent corporation's money is in trust for creditors, and payments thereof with intent to prefer renders creditor receiving payment trustee to that extent.**

Insolvent corporation's money is held in trust for creditors, and payment of it under circumstances showing insolvency, knowledge thereof, and intent to prefer, does not operate as change of title, but renders creditor receiving such payment trustee, subject to accounting.

In Bankruptcy. In the matter of the German-American Improvement Company. On petition to review order of referee disallowing claim. Decision affirmed, and motion to reverse denied.

Order affirmed by Circuit Court of Appeals, 3 F.(2d) ——.

H. F. Cochrane, of Brooklyn, N. Y., for claimant.

INCH, District Judge. This is a petition to review an order of a referee disallowing a claim. The claim is based on a promissory note dated April 6, 1911, payable on demand to one Henry Doscher, trustee. The maker of the note is the above-named corporation, now bankrupt.

[1] The statute of limitations commenced to run from the date of the note. The amount of the note is $130,190, and interest is claimed amounting to $46,087.26, making the total amount of the claim $176,277.26. This corporate maker is a defunct real estate promotion company. On March 5, 1921, it filed a voluntary petition and was duly adjudicated bankrupt on that day.

This claim on the note, together with several small creditors, whose claims do not exceed in the aggregate $2,000, and a creditor holding a duly recorded judgment against the corporation for some $29,000, comprise all the creditors. The assets given in the schedules amount to about $84,000. Allowing, therefore, the usual shrinkage in assets, it would appear that this corporation was not a bankrupt at all, but for this large debt represented by the note in question.

Under such circumstances, this note attracts peculiar attention. It appears that this Henry Doscher, trustee, the payee, is the trustee for the stockholders of the corporation, and it should be borne in mind that this bankruptcy is a voluntary one. In other words, the stockholders really placed the corporation in bankruptcy.

The referee has held that the note does not represent a valid loan, but it is unnecessary for me to determine this, in view of other facts which I find. I assume that the note represents a valid loan, as I can see nothing that prevents such assumption. There is nothing new about a group of promoters loaning money to a corporation in which they are deeply interested, and taking back a note. In fact, often all that optimism has left is an unpaid promissory note.

This note would be barred by the statute of limitations, and therefore not allowable, if not acknowledged or something paid on it, by way of principal or interest, since its date 12 years ago. Section 59, Civil Practice Act. No written acknowledgment dur-

ing this period appears, but several payments of interest do appear, the last two being particularly important.

It seems that the corporation ceased to pay interest in 1913, and did not resume payment of any kind until 6 years, when on April 8, 1919, it paid to this Henry Doscher, as trustee for these beneficiaries, who were also the stockholders, the sum of $7,811.40. At that time the suit, which afterwards was reduced to judgment, had been commenced. On November 5, 1920, very close to four months of the subsequent filing of the voluntary petition, another payment was made of $7,811.40, making a total payment of some $15,000 to this particular trustee payee, within two years of its voluntary bankruptcy.

It is plain from the record before me that, assuming the note to be a valid loan, as I do for the purpose of this decision, the corporate maker of the note was hopelessly insolvent at the time it made these payments in 1919 and 1920. In fact, it would seem to have been hopelessly insolvent since it made the note. It is also plain that this insolvent condition was thoroughly well known during all this time to the trustee payee and the stockholders, for whom he was trustee.

The purpose of such payments, therefore, in 1919 and 1920, was clearly to prefer the trustee payee, or in other words themselves, to the creditor whose suit was pending during the payments, and who subsequently obtained judgment, to avoid execution on which these very people caused the corporation to be declared a voluntary bankrupt in this court. Such payments by the corporation while insolvent, and with the knowledge of such insolvency and intent to prefer on the part of both the debtor corporation and the creditor, were illegal under section 66 of the Stock Corporation Law of the state of New York (Consol. Laws, c. 59), and constituted a preference recoverable by law.

[2] No offer appears to have been made to return these preferential payments before offering the claim for allowance, and it is argued by the trustee here, properly, on the authority of Stevens v. Nave-McCord Co., 150 F. 71, at page 75, 80 C. C. A. 25, although not cited, tthat the referee was right in disallowing the claim on this ground alone. However, the Case of Wright-Dana Hard-

ware Co., 212 F. 397, 129 C. C. A. 73, in our own circuit, seems to me to be controlling and provides a different method of procedure. Hence, as I assume the note to represent a loan, and the mere fact of a preference not being a bar to its allowance in the first instance, it must be allowed, if that is all there is to the matter.

[3] I believe, however, that the payments in 1919 and 1920 did not lift the bar of the statute of limitations, for the reason that I do not see how such grossly preferential payments, under circumstances showing knowledge by both creditor and debtor, not only of insolvency, but of intent to prefer, can be construed to be such payments as the law requires under section 59 of the Civil Practice Act. Along this same line is the case of In re Banks (D. C.) 31 Am. Bankr. Rep. 270, at page 273, 207 F. 662.

[4] It seems to me that money of an insolvent corporation is legally in trust for the creditors during insolvency, and any payment of such money under conditions showing, not only such insolvency, but knowledge of same and intent to prefer, simply transfers such part of the funds to a creditor also knowing the insolvency and intent to prefer, subject to this title in all the creditors, to be thereafter asserted by them and recovered for all the creditors by their trustee or other representative within the time and in the manner allowed by law. Such a creditor simply becomes a trustee of the fund received, and in no sense does he become entitled to the money, as against the other creditors, in the sense that gives him the right to keep and apply the money as a part payment of the debt, or for any purpose, except to account for and return the same when legally called on so to do.

The payment contemplated by law is a payment which the creditors can legally keep and own, and to which the debtor before payment has clear ownership at the time. Accordingly I believe the note was barred for the reason that no payment authorized by law had been made on the same since 1913, a period of over six years, and that the referee was right in disallowing the claim based on such note.

His decision is affirmed, and the motion to reverse is denied.