## LUDLOW VALVE MFG. CO. v. DUREY, Collector.

District Court, N. D. New York.
Dec. 3, 1931.

neering Company. The manufacturing plants of both the plaintiff and the Sturgess Company were located in Troy, N. Y.

The following facts are stipulated by the parties:

The Sturgess Company was organized in 1901 under the laws of the state of New York with a capital stock of 1,000 shares of the par value of $100 per share, making a total of $100,000. In 1905 and 1906 the plaintiff purchased the entire capital stock of the Sturgess Company for $94,500.

In 1909 it was proposed by the directors of the plaintiff company to write off the entire investment of the plaintiff in the Sturgess Company through annual charges on its books, which were subsequently made, as follows:

| Year. | Amount Charged off. |
|---|---|
| 1907 | $20,000 |
| 1909 | 10,000 |
| 1910 | 10,000 |
| 1911 | 10,000 |
| 1912 | 10,000 |
| 1913 | 10,000 |
| 1914 | 10,000 |
| 1915 | 14,499 |
| Total | $94,499 |

This investment was carried on the books of the plaintiff at the value of $94,500 as of March 1, 1913. No deductions were taken on the income tax returns for the 1913, 1914, and 1915 write off.

From 1906 until 1918, inclusive, the plaintiff loaned or advanced to the Sturgess Company various sums of money amounting in all to $111,034.92. These loans and advances were all evidenced by entries upon the books of the Sturgess Company. They are shown by the years in which they were made in the following table:

| | |
|---|---|
| 1916 | $17,841.90 |
| 1907 | 32,941.17 |
| 1908 | 6,108.75 |
| 1909 | 10,019.43 |
| 1910 | 1,486.02 |
| 1911 | 6,779.85 |
| 1912 | 4,794.31 |
| 1913 | 7,110.90 |
| 1914 | 10,858.36 |
| 1915 | 4,774.71 |
| 1916 | 6,217.85 |
| 1917 | 3,767.68 |
| 1918 | 1,306.03 |

On March 17, 1919, the plaintiff filed with the defendant a tentative tax return for the

Guggenheimer, Untermyer & Marshall, of New York City (Edward P. Crummer, of New York City, of counsel), for plaintiff.

Oliver D. Burden, U. S. Atty., and B. Fitch Tompkins, Asst. U. S. Atty., both of Syracuse, N. Y. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., Ottamar Hamele, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., of counsel), for defendant.

COOPER, District Judge.

Plaintiff seeks to recover $55,914.52 income tax paid for the year 1918 under protest and claimed to have been erroneously assessed. A jury trial was duly waived.

Plaintiff's claim is based on its dealings with its wholly owned subsidiary or affiliated corporation, the Sturgess-Governor Engi-

year ended December 31, 1918, which return showed an estimated tax of $77,800.00. On that date plaintiff paid defendant the sum of $19,450 on account of said tax.

On May 31, 1919, the plaintiff filed with the defendant a completed tax return for the year ended December 31, 1918, which return showed a net income of $30,639.80 and a tax of $3,231.26.

Thereafter the plaintiff filed with the defendant a claim for the refund of $16,218.74 income tax for the year 1918, being the difference between said sum of $3,231.26 and the said sum of $19,450.00. Said claim for refund was allowed in full, and the amount in question was thereafter and on January 18, 1920, paid to the plaintiff.

Upon audit and review, the Commissioner of Internal Revenue determined a deficiency tax against plaintiff for the year 1918 in the amount of $94,364.97. The commissioner advised plaintiff of this determination by letter dated February 28, 1921. Assessment of said deficiency tax was duly made on the April, 1921, list.

Upon further proceedings being had, the Commissioner of Internal Revenue found an overassessment against plaintiff for the year 1918 in the amount of $26,546.72. The commissioner advised plaintiff of this finding by letter dated July 30, 1922.

Upon further proceedings being had, the Commissioner of Internal Revenue found a further overassessment against the plaintiff for the year 1918 in the amount of $6,925.64. The commissioner advised plaintiff of this finding by letter dated April 26, 1923. Said letter discloses the final determination by the Commissioner of Internal Revenue of the plaintiff's tax liability for the calendar years 1917, 1918, and 1919.

By reason of said findings of overassessment, the said deficiency tax for 1918 was reduced to $60,892.62. On account of this tax plaintiff paid the defendant $4,798.09 on April 29, 1923 and $55,914.52 on June 30, 1925. At the time of making the last-named payment plaintiff filed with defendant a letter dated June 26, 1925, protesting said payment.

On December 24, 1925, plaintiff filed with defendant a claim for the refund of said tax to the extent of $55,914.52, with interest thereon. This claim was wholly rejected by the defendant.

It appears also that the machinery manufactured by the Sturgess Engineering Company was intended to be used for the direct application of the power obtained from falling water to power purposes; that the business was a losing venture from the beginning, due in part at least to the development and use of machinery for conversion of the water power into electric power and the application to power purposes of the electricity so generated.

Plaintiff's claim in its complaint here and in its application to the Commissioner of Internal Revenue for correction of the alleged overassessment out of which the demand for $55,914.52 income tax for 1918 arose is based on two claims of error.

One is that the reduction from its 1918 income of $89,515.13 (arising from debts claimed to be then due to plaintiff of $111,034.92 less $21,435.40, realized from the value of the assets of the Sturgess Company) claimed in its final 1918 income tax return and rejected by the commissioner, should have been allowed.

The other is that the purchase price of the stock of the Sturgess Company, viz., $94,499 ($94,500.00 less $1), or at least $94,500, the latter being the value of such stock as carried on the books of the company on March 1, 1913, when the income tax law became effective, should also have been allowed as a reduction from its 1918 income. Had these reductions been allowed, the plaintiff contends there would have been no additional tax due.

The statutes applicable to the issue are sections 234 and 240 of the Revenue Act of 1918 (Act of February 24, 1919, 40 Stat. 1057).

Section 240 is in part as follows: "Sec. 240. (a) That corporations which are affiliated within the meaning of this section shall, under regulations to be prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income and invested capital for the purposes of this title and title 3, and the taxes thereunder shall be computed and determined upon the basis of such return. * * * "

Section 234 is in part as follows:

"Sec. 234. (a) That in computing the net income of a corporation subject to tax imposed by section 230, there shall be allowed as deductions: * * *

"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise.

"(5) Debts ascertained to be worthless and charged off within the taxable year."

Article 637 of Regulations 45 is in part as follows: "Consolidated Net Income of Affili-

ated Corporations: Subject to the provisions covering the determination of taxable net income of separate corporations, and subject further to the determination of intercompany transactions, the consolidated net income shall be the combined net income of the several corporations consolidated. * * *"

Articles 144, 151, 152, and 154 of the Regulations 45, relating to reductions from income are also applicable in part:

Article 144 reads in part: "However, if the stock of a corporation becomes worthless, its cost or its fair market value as of March 1, 1913, if acquired prior thereto, may be deducted by the owner in the taxable year in which the stock becomes worthless, provided a satisfactory showing of its worthlessness be made as in the case of bad debts. See article 151."

The ground on which the taxing department of the government rejected plaintiff's claim is "in view of the fact that the two companies were consolidated during the year 1918, the loss claimed through liquidation, both as to the investment account and the loan account, is an inter-company one and therefore not deductible."

█ Plaintiff claims that it took over the assets of the Sturgess Company at a value of $21,435.40, that this was done in February, 1918, and that thereby the Sturgess Company was liquidated and affiliation ceased; that then and not until then, did plaintiff become entitled to deduct these two items of loss from its income. Defendant denies that the Sturgess Company was liquidated in 1918, and contends that actual liquidation and complete cessation of business did not take place until 1919. This is the only disputed question of fact in the case.

The plaintiff filed a consolidated income tax return for both companies for the entire year 1918, and did not file a separate return for the plaintiff company for any part of the year.

Such taking over of assets in February, 1918, as plaintiff claims, does not clearly appear, so far as the record shows. On February 9, 1918, which the defendant assumes is the date on which plaintiff claims this taking over of the assets occurred, the books of the Sturgess Company show that the machinery was sold to the plaintiff company for $8,949.-50. No other important transaction appears on that day.

That the Sturgess Company continued its activity after that date is reasonably clear from the record.

It shows several small payments for pay roll in February, 1918, after the 9th. Among other things shown is that on February 28th the Sturgess Company paid the plaintiff company $9,030.67 for some purpose. It may be that this was, and the record rather so suggests, for the purpose of putting the disbursements and receipts through the plaintiff company's books. In any event, in March, 1918, there were disbursements for pay roll and also a pay roll disbursement on April 30, 1918. There were receipts from various persons, including the Ludlow Valve Company in March, April, May, June, July, and August, 1918. There were also disbursements in each of these months to the plaintiff company, some of them being substantial, like $2,900 on April 30th, 1918, $2,267.82 on June 30, 1918.

In October, November, and December, 1918, there were small receipts and disbursements. On December 23, 1918, the books showed receipt from the Ludlow Valve Company of $350, and payment of the same amount the same day to S. Morgan Smith Company. If affiliation had entirely ceased and the Sturgess Company was nonexistent, such a payment would have been made directly by the plaintiff company. In January, February, and March, 1919, there were also some small receipts and disbursements.

The lands and buildings of the Sturgess Company were sold in March, 1918, as well as certain office furniture. Plaintiff's accountant testified on the trial that the last sale of governors by the Sturgess Company was made in June, 1918, and that such parts were made by the plaintiff company for the Sturgess Company.

It is reasonably clear from the foregoing that the affiliation did not cease,but continued throughout the year, and that there was no final disposition of the assets of the plaintiff in February, 1918.

The case at bar is much like the case of Utica Knitting Company v. U. S. decided by the Court of Claims in an opinion handed down May 6, 1919, and not reported at the time of filing the briefs. In that case the board of directors of a wholly owned subsidiary resolved in June, 1913, that the subsidiary should go into liquidation. During the year 1917 the subsidiary manufactured no products, incurred no expenses or liabilities, had no receipts except $321.06 in transactions prior to this year, made no disbursements except $10.21 in debts incurred prior to such year, and no sales of property or service except to the parent company. Final

liquidation took place in December, 1917. The Court of Claims held that the relations between the parent and subsidiary continued, and they were a unit until the latter company was finally liquidated in December, 1917.

That court held: "It would be an extremely technical evasion of the purpose of the statute to hold that a conceded affiliation ceases when the subsidiary ceased to sell and manufacture goods while at the same time the parent company owns all the stock of the subsidiary and the subsidiary continues in business for the purpose of winding up its affairs, turning over its property to the parent, collecting its accounts and paying its debts, which debts and accounts arose out of the knitware business in which both the parent and subsidiary were engaged."

The facts showing a continuance of corporate activity are stronger in the case at bar than they were in the Utica Knitting Case. That case is not rendered inapplicable because the final question before the court was the allowance of intercompany losses among affiliated corporations in determining the excess profits tax for the calendar year and not for normal tax.

The fact that beside the foregoing activities the plaintiff company here filed only a consolidated return for the entire year, did not file a separate return for the period after affiliation is claimed to have ceased and apparently made no effort to obtain the consent of the Commissioner of Internal Revenue to file a separate return for the last ten months of 1918, and the further fact that the subsidiary made a balance sheet for the entire year 1918, are consistent only with the view that the affiliation of the two companies was not terminated before the end of the year 1918, and that the plaintiff company during 1918 did not consider the affiliation terminated.

The plaintiff claims the Utica Knitting Company Case is in conflict with the case of Remington-Rand Company, Inc., v. U. S., 33 F.(2d) 77, decided by the Second Circuit Court of Appeals, certiorari denied 280 U. S. 591, 50 S. Ct. 39, 74 L. Ed. 639, and binding on this court. But there seems to be no such conflict.

In the Remington-Rand Case, the affiliation was severed by the sale of the capital stock of the subsidiary during the year, and a complete cessation of intercompany relations immediately followed. The loss upon sale of the stock (or rather gain) was held deductible during the period following the termination of the affiliation.

In the Utica Knitting Company Case there was no sale of the capital stock of the subsidiary, and there was no liquidation of the subsidiary until the close of the year; the affiliation therefore necessarily continuing throughout the year.

The facts in the case at bar are in reasonably close analogy to the facts in the Utica Knitting Case and not at all like this in the Remington-Rand Case. A claim of liquidation is not equivalent to clear and unmistakeable proof of liquidation resulting in a practically complete inactivity and elimination of corporate life on the part of the subsidiary. Nor can a claim that entries were erroneously made on the books of the subsidiary instead of on the books of the parent company save the day.

Cases holding that upon the outright sale of the capital stock of a subsidiary during a year resulting in a complete severance of intercompany relations, the loss resulting from such sale may be deducted by the parent from income during the remainder of the year do not support plaintiff's contention here.

Plaintiff also asserts that its case is within the doctrine of Riggs National Bank v. Commissioner, 17 B. T. A. 615. The Riggs Bank surrendered the stock of its subsidiary, the Hamilton Savings Bank, on June 10, 1922, and took over in place thereof the assets of the Hamilton Bank, which, upon liquidation by the Riggs Bank, showed a loss of $94,949.07 upon the stock investment.

The Riggs Bank Case differs from the plaintiff's case, in that the surrender of the stock and acceptance of the assets of the Hamilton Bank as consideration for such surrender was just as much a sale of stock as if it had been for dollars, as in the Remington-Rand and other cases. Not only was there this sale of the capital stock, but there was also complete cessation of activity of the subsidiary and complete severance of affiliation. Such conditions do not exist here.

In support of its contention that what happened in February, 1908, was liquidation, such liquidation as constituted a complete severance of affiliation, the plaintiff cites several cases besides those already mentioned.

Concededly an actual sale of stock of the subsidiary, either for money or by taking over its assets in consideration of the surrender of the stock, followed in the latter case by liquidation or complete cessation of activity, terminates the affiliation.

Even the taking over of its assets with retention of the stock as valueless may termi-

nate the affiliation if accompanied by immediate cessation of all activity by the subsidiary.

There may be other circumstances where the subsidiary ceased all its corporate activity and became a dead, but not a sleeping, corporate entity, and this terminated an affiliation. But such is not the fact in this case. The facts here are more like the Utica Knitting Company Case, supra, and are less favorable to the taxpayer than were the facts in that case.

The tax department was right in holding that affiliation continued throughout the year, and that plaintiff was not entitled to deduct from its 1918 income its losses from intercompany transactions.

■ Even if it be assumed that affiliation ceased on February, 1918, as plaintiff contends, plaintiff is not entitled to deduct the $89,515.13 for worthless debts. As to the debts outstanding on March 1, 1913, plaintiff at the best could deduct from its income in 1918 only such value as such debts had on that day. These debts amounted, at face value, to $76,722.61, as appears by Plaintiff's Exhibit A, a computation by plaintiff's expert accountant witness.

In this exhibit, plaintiff seeks to show that its investment in and loans to the Sturgess Company had a value of $105,906.75 on March 1, 1913. The method is to take $100,000, the par value of the stock, as the value of the property, and deduct therefrom losses sustained to March 1, 1913, of $69,171.31, leaving a value of the assets of $30,882.69. To this is added the above amount of loans of $76,722.61, making the total of approximately, but not exactly, $105,906.75.

But plaintiff entirely ignores the losses of the Sturgess Company proper, to its acquisition by the plaintiff, viz., $38,308 which came out of capital and which had been written off, but was restored in 1918. Deducting this $38,308, as should be done, the value of the investment both in loans and stock purchases is $77,598.75, which is substantially equal to the amount of the loans then outstanding.

If this gives a fair value of the assets on March 1, 1913, the loans down to that time would be worth their full value and the stock would be worth nothing. But this method gives an uncertain value under all the circumstances, for the fair market value is not thus accurately to be ascertained.

The fair market value is defined in Phillips v. U. S. (D. C.) 12 F.(2d) 598, 601, as: "The value of the property in money as between one who wishes to purchase and one who wishes to sell; the price at which a seller willing to sell at a fair price, and a buyer willing to buy at a fair price, both having reasonable knowledge of the facts."

It cannot reasonably be said that any one would pay such price of $77,598.75 for the Sturgess Company under the conditions then existing. The company had invariably lost money, its entire capital investment had been wiped out, it was engaged in the manufacture of products which were steadily being displaced by other products available for an improved method for the utilization of water power, which the Sturgess Company's product was not.

Its real value was probably the value of the assets in liquidation, and this was probably not more than the assets sold for in 1918 at a time of higher prices than in 1913, and when indeed there had probably been additions to the capital account. The concern had no good will or franchise value. Holmes, Federal Taxes (6th Ed.) p. 623; Riggs National Bank v. Commissioner, 17 B. T. A. 615; People ex rel. U. T. Co. v. Coleman, 126 N. Y. 433, 438, 27 N. E. 818, 12 L. R. A. 762.

The same plaintiff's accountant arrived at a much less value of the assets on March 1, 1913, by another method.

He took the realization price in 1918 of $21,409.40 and added the losses after March 1, 1913, amounting to $63,892.39, making a total of $85,301.79. From this he deducted $4,035.53 later realized from the assets in 1918, leaving the value of the assets on March 1, 1913, at $81,266.26. This witness said that such sum was the value of the capital stock on that date, but clearly it would give only the value of the assets, and, since the then outstanding debts were $76,722.61, the stock could have had no value.

This would give the debts on March 1, 1913, a value of $81,266.26.

The same considerations of fair market value of that date apply as before. The value of the debts outstanding on March 1, 1913, could not have been more than the realized price of $21,409.40 in 1918.

■ But in 1915 and 1916 the plaintiff company evidently considered its loan account with the Sturgess Company worthless as it had considered its stock investment worthless in 1909.

In 1915 and 1916 the plaintiff wrote off the loan account to the amount of $45,501 in 1915, and $50,460.21 in 1916. The fact that it did not deduct those amounts from its in-

come is not conclusive. It clearly evidenced its decision that the loans were worthless at that time.

There was no provision for consolidated returns prior to 1917.

The fact that the plaintiff did not deduct its worthless debts in either of 1915 or 1916 is a misfortune from which the court can give no relief now. Darling v. U. S. Commissioner (C. C. A.) 49 F.(2d) 111, 113.

Plaintiff may not keep alive as good accounts debts determined to be worthless and deduct them in a more prosperous year. Avery v. Comm., 22 F.(2d) 6, 55 A. L. R. 1277 (C. C. A. 5); Darling v. Comm. (C. C. A.) 49 F.(2d) 111; Stephenson v. Comm. (C. C. A.) 43 F.(2d) 348.

Such loans as were not written off in 1916 and 1916, if any, or were made later, were satisfied out of the $21,435.40, which sum the plaintiff realized from the assets of the subsidiary in 1918.

In the foregoing, no attention has been given to the testimony of defendant's expert accountant who said that down to January 31, 1913, the losses of the Sturgess Company including the $38,308.00 written off and later restored, as before shown, amounted to $104,343.13.

Taking plaintiff's stock investment at the book or par value of $100,000 instead of $94,500, the purchase price, this witness showed that there was a deficit of $4,343.13 on June 31, 1913. Perhaps he meant this as showing that there was no value for the Sturgess Company capital stock on that date, or on March 1, 1913. His method omits the debts of $76,722.61 on March 1, 1913, and is hardly available to prove that there was nothing of value for debts.

Defendant raises other grounds for contention that plaintiff is not entitled to deduct these loans from income in 1918, even if it be conceded that there was such liquidation of the subsidiary in February, 1918, as constituted termination of affiliation. Some of the grounds are:

(1) That the $72,205.08 amount of loans outstanding on January 1, 1912, were barred in 1918 by the statute of limitations, whether considered as separate debts arising from each separate loan, or a combined debt.

(2) That plaintiff knew each of the loans made after March 1, 1913, at least, was worthless when made and should have been deducted from income when made.

■ That the six-year New York state statute of limitations (Civil Practice Act, § 48)

had run in 1918 against debts due on demand contracted prior to January 1, 1912, is without doubt. Each was a separate debt and was payable on demand. The statute began to run immediately and no demand was necessary. First National Bank v. Story, 200 N. Y. 346, 355, 93 N. E. 940, 34 L. R. A. (N. S.) 154, 21 Ann. Cas. 542; McMullen v. Rafferty, 89 N. Y. 456; Shutts v. Fingar, 100 N. Y. 542, 3 N. E. 588, 53 Am. Rep. 231; In re German-American Importing Company (D. C.) 2 F.(2d) 991, affirmed (C. C. A.) 3 F. (2d) 572; Kenyon v. Youngman, 59 App. D. C. 300, 40 F.(2d) 812; Hardon v. Dixon, 77 App. Div. 241, 78 N. Y. S. 1061.

Conner v. Chellis, 161 App. Div. 360, 146 N. Y. S. 375, cited by plaintiff, involved a mutual account not existing here and is not applicable. Other cases cited by defendant, Minion v. Warner, 238 N. Y. 413, 418, 144 N. E. 665, 41 A. L. R. 1412; Powers Mfg. Co. v. Commissioner, 7 B. T. A. 786, affirmed (C. C. A.) 34 F.(2d) 255; Appeal of Winthrop Ames, 1 B. T. A. 63; Appeal of Portland Railway, Light & Power Company, 1 B. T. A. 1150, are not applicable.

It appears, however, that in C. B. June, 1925, page 151, the Solicitor General expresses the opinion that a debt may not be claimed by a taxpayer as worthless because its collection is barred by the statute of limitations, where the creditor has such control over the debtor that he may prevent the statute being raised as a defense.

If this is good law, the government cannot, when it is on the other side of the question, consistently claim that such controlled debtor will certainly plead the statute, and that therefore the debt must be deducted as a bad debt as soon as the statute has run. The statute cannot be a shield in the hands of the taxpayer and a sword in the hands of the government.

Though not necessary for decision, it is believed that both government and taxpayer may take debts as worthless when their collection is barred by the statute of limitations, even though the creditor may control the debtor, especially where, as here, later debts, not barred by the statute, had been incurred in the meantime, equal to the value of the entire assets of the debtor, or at least equal to any such which might reasonably be expected to be collectible from such assets.

■ From the foregoing, it is reasonably clear that the plaintiff knew at all times after March 1, 1913, that any advances made to the Sturgess Company were worthless, its then

outstanding debt not being barred from collection by the statute, and should have been deducted when made.

If it kept the Sturgess Company as a going concern for its own purposes, that is its own affair.

 The burden is on the plaintiff to prove his right to exemption of this indebtedness from income for tax purposes in 1918. U. S. v. Anderson, 269 U. S. 422, 443, 46 S. Ct. 131, 70 L. Ed. 347. Plaintiff has failed to meet the burden.

From the foregoing, if the correct view has been taken, it is clear that the capital stock of the subsidiary company was entirely worthless upon March 1, 1913, under the ordinary rule of law that creditors come before the stockholders. It would seem that the rule is not changed by the fact that they are both one and the same person.

Whether affiliation ceased in February, 1918, or continued throughout the year, is unimportant in respect to the stock investment.

If it be considered that the Sturgess Company never had a profitable year and that from 1903 to 1912 its losses wiped out its entire capital stock and that its losses continued unabated though in varying amount, from March 1, 1913, to the time that it finally ceased its activities, there seems no support then for the plaintiff's contention that it is entitled to deduct any sum from the value of its stock investment of March 1, 1913, or at any other time. It has already been shown that the Sturgess Company had no good will value or franchise value on March 1, 1913, or at any subsequent time.

While not necessary to the decision, it appears that this stock had no value at any time between 1913 and 1918. There were apparently no additions to capital down to 1917. The loans from 1913 to 1916, inclusive, were $28,961.82. Adding this to the $20,938.91 deficiency on March 1, 1913, makes a total deficiency of $49,899.73. This had to be wiped out by profits before there could be a value for the capital stock. There never were profits.

Plaintiff contends that it added $42,037.22 to the capital in 1917 and 1918. Assuming this to be true and deducting this from $49,-899.73, there would still be a deficit of $7,-862.51 in 1918, and, if we add the $5,073.71 of loans made in 1917 and 1918, the deficiency reaches $12,836.22. So that at no time since 1912 has this capital stock had any market value.

But it may be said that in 1915 and 1916 plaintiff wrote off its debts due from the Sturgess Company to the amount of $45,501 in 1915 and $50,460.21 in 1916, thus practically wiping out all debts then due and leaving the capital stock having a value equal to the assets then existent. If so, it is immaterial, for its losses between that time and the so-called liquidation in 1918 exhausted all value of the assets over the liabilities and left the stock valueless.

 The crucial point is that under article 144 of Regulations 45, if the stock of a corporation at any time after March 1, 1913, becomes worthless, upon sale or liquidation, all that can be deducted is the fair market value on March 1, 1913. If it had no value on that date, there can be no deduction upon sale or liquidation, even if there be some time in the interim in which the stock has some value. The intermediate fluctuations in the value of the capital stock are immaterial.

The defendant also contends that even if it be assumed that a termination of affiliation of the two companies occurred in 1918 and the stock had a value of $34,500 on March 1, 1913, plaintiff cannot claim any loss of $34,-500 or any other sum on the capital stock of the Sturgess Company because such loss, even if it were a loss, is more than offset by the losses of the Sturgess company in 1917 and 1918, which the plaintiff company used in reduction of income in its consolidated returns for the years 1917 and 1918. The point seems well taken. See Riggs National Bank v. Commissioner, 17 B. T. A. 615.

The losses of the Sturgess Company used by the plaintiff company in reduction of its income for the years 1917 and 1918 are $21,-344.44 and $20,693.08 respectively, totaling $42,037.22.

Plaintiff also contends that the amount of losses of its investment in the Sturgess Company stock could not be ascertained until 1918 for it was not until then that the Sturgess Company ceased business and its assets were disposed of, i. e., that the matter was not until then a completed transaction.

Inasmuch, however, as the stock had no value on March 1, 1913, the plaintiff is entitled to no deduction because of loss on the investment for any reason.

The plaintiff's claim to deduction from income for 1918 of $34,500, the alleged market value of the Sturgess Stock in 1918, must be denied.

Upon the assumption that affiliation ceased upon the alleged liquidation in Feb-

ruary, 1918, plaintiff further claims that the court should divide the year 1918 into two parts, one the time down to February, 1918, while affiliation existed, and the other the remainder of the year after affiliation ceased. Then, plaintiff claims, its losses upon the loan and stock investment could be allowed as deductions in the period after affiliation ceased.

Such was done by the Board of Tax Appeals in Riggs National Bank v. Commissioner, 17 B. T. A. 615. In that case the Riggs Bank lost $94,949.07 on its stock investment in the Hamilton Savings Bank. The Riggs Bank after about six months of affiliation and on June 10, 1922, surrendered its stock and took in payment therefor all the assets of the Hamilton Bank. Upon liquidation of assets the above loss of $94,949.07 resulted. $41,855.22 of such loss occurred during the affiliation. The remaining $53,463.85 was allowed in the period after affiliation. Plaintiff believes such could be done here.

But the Riggs Bank filed two returns; a consolidated return for the affiliated period, and a separate return for the remainder of the year. The Revenue Act of 1921 (42 Stat. 227) was then effective. Plaintiff here never filed any separate return for the period after it claims the affiliation ceased, and never applied to the commissioner to do so, assuming that to be necessary.

Plaintiff says at one place in the brief that it should have filed a separate return for the period after affiliation ceased and at another place that the Revenue Act of 1918 makes no provision for a separate return after affiliated corporations cease to be such.

The Revenue Act of 1918 does not seem to prevent filing a separate return. It would seem to be the fair intendment of section 240(a) of that act that a consolidated return is only necessary to be filed while the affiliation continued and that it is the right of the parent company to file a separate return if the affiliation ceases. Even if the permission of the Commissioner of Internal Revenue to file such a return is necessary, no application, so far as the evidence shows, was made here.

The Revenue Act of 1921, under which the Riggs Bank filed both consolidated and separate returns, seems not to have changed the law of 1918.

The Revenue Act of 1921 says in section 240(e): "Corporations which are affiliated within the meaning of the section shall make consolidated returns for any taxable year beginning prior to January 1, 1922, in the same manner and subject to the same conditions as provided by the Revenue Act of 1918."

Plaintiff further urges that the court can under rule 50 of the rules of practice of the Board of Tax Appeal compute the taxes upon a division of the year into two periods, viz., during and after affiliation and correct any errors made.

Presumably, plaintiff means that the court could, under such rule, treat the plaintiff's situation as if it had filed both a consolidated and separate return, or at least, give plaintiff such relief as it is entitled to, despite the fact that plaintiff filed no separate return. It seems, however, that this rule is based on special statutes relating to and governing the functions of the Board of Tax Appeals, and is not applicavle to the courts.

Judgment must be entered dismissing the complaint of the plaintiff.