JAMISON et al. v. EDWARDS, Formerly Collector of Internal Revenue (two cases).

SAME v. BOWERS (two cases).

SAME v. LOWE, Formerly Collector of Internal Revenue (two cases).

District Court, S. D. New York.
April 27, 1933.

303

burgh, Pa. (Arthur Gunther, of Brooklyn, N. Y., and W. A. Seifert and Frank C. Miller, both of Pittsburgh, Pa., of counsel), for plaintiffs.

George Z. Medalie, U. S. Atty., of New York City (Samuel C. Coleman and Frank Chambers, Asst. U. S. Attys., both of New York City, and Edward H. Horton and Walter Mahon, Sp. Attys., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for defendants.

COXE, District Judge.

These are motions by the defendants to dismiss for insufficiency amended complaints in six suits brought by the personal representatives of Christina Arbuckle and Catherine A. Jamison, deceased, to recover tax refunds for the years 1914 to 1923, inclusive. The complaints are all substantially identical, except for variations in parties, amounts, and formal allegations; and the motions present for determination a single question, whether the yearly losses sustained by Charles Williams Stores, Inc., a New York corporation, from 1914 to 1923, inclusive, should be allowed as' deductions in the personal income tax returns of Christina Arbuckle and Catherine A. Jamison for the years in which the losses were concurrently sustained by the corporation.

In 1912, Christina Arbuckle, William A. Jamison, and Catherine A. Jamison became partners in the firm of Arbuckle Bros., which had for many years been engaged in the coffee, sugar, and wholesale grocery business in New York, Chicago, Pittsburgh, and foreign countries. The business was composed of a number of different departments, each maintained and operated as a distinct branch or unit; and there were also various separate auxiliary services, independently controlled, and using distinctive trade-names different from that of the partnership. The stated capital of the firm appearing in the partnership agreement was $7,000,000, but the partners had on deposit an·additional $37,613,-515.49, thereby giving the firm an initial capital of $44,613,515.49.

After the formation of the partnership, it was decided to establish a mail order business, in order to have "a new means for ultimate distribution of the partnership products," and in February, 1913, Charles Williams Stores, Inc., was incorporated in New York, with an authorized capital of $1,000,-000, consisting of 10,000 shares of the par value of $100 each. The name given to the corporation was purely fictitious, and chosen

Cullen & Dykman, of Brooklyn, N. Y., and Smith, Shaw, McClay & Seifert, of Pitts-

so as to withhold from the trade knowledge that Arbuckle Bros. was engaging in the mail order business. It was determined also that at the outset the business would be restricted to lines which did not compete with regular Arbuckle products.

The 10,000 shares of the stock of the company were originally issued, 4,545 shares to William A. Jamison, 2,475 shares each to Christina Arbuckle and Catherine A. Jamison, 5 shares to W. G. Gilmore, and 500 shares to Charles A. Jamison; and all of this stock was fully paid for by the partnership and charged on its books to "Loans on Collateral-call," and later in the same year transferred to "Loans Receivable." The stock of the company continued in the names of the original stockholders during the entire period involved in the present suits.

During the succeeding years, the partnership from time to time made substantial cash advances to the mail order company, which were all charged on the partnership books to "Loans Receivable"; and for the period ending June 23, 1923, when Catherine A. Jamison died, the total of such advances amounted to $29,670,000, against which there were credits of $3,321,438.65, leaving a net loss of $26,-348,561.35. By a settlement agreement, dated April 25, 1925, this net loss was distributed among the three partnership interests, the interest of Catherine A. Jamison being charged with $13,065,061.42, and that of Christina Arbuckle with $12,003,009.17. .

The mail order company had a large organization of its own, and was operated as a distinct and separate entity from the partnership, with separate books, offices, and bank accounts, and with separate elected officials. It filed federal corporation income tax returns for the years 1913 to 1923, inclusive, but paid no taxes because losses were shown in each year. It also filed Federal stock tax returns and state franchise tax returns for the years in question.

In the federal income tax returns of the partnership, and the individual partners, for the years 1913 to 1923, inclusive, the operations of the mail order business were omitted, and no deductions were claimed or allowed for losses sustained by the corporation; and it is insisted in the present suits that these returns were erroneous, and should be corrected so as to reflect the concurrent yearly losses of the company.

■ It is first contended by the plaintiffs that the corporation was a mere department of the Arbuckle partnership, and that the corporate entity should be disregarded for tax purposes; but I think this contention is sufficiently answered by Nixon v. Lucas, 42 F.(2d) 833 (C. C. A. 2); Planters' Cotton Oil Co. v. Hopkins, 286 U. S. 332, 52 S. Ct. 509, 76 L. Ed. 1135, and Dalton v. Bowers, 287 U. S. 404, 53 S. Ct. 205, 77 L. Ed. 389. In the Nixon Case, supra, it was held squarely that a partnership could not treat a wholly owned corporation as a mere department of its business for tax purposes. Indeed, the facts in that case are much stronger in support of the plaintiffs' position than are the facts of the cases at bar, for in the Nixon Case the corporation maintained only a shadow of a separate existence, and practically all of its products were sold to the partnership at prices dictated by the partners, whereas in the cases at bar the corporate organization was kept separate and apart from the partnership, and sales were made directly to the public without interference by the partners, and in such a way as not to compete with the products handled by the partnership. Furthermore, in the cases at bar, there was no complete identity of interest between the corporation and the partnership, as only three of the five stockholders of the corporation were members of the partnership; and even the proportionate interests of these three in the stock of the corporation were entirely different from their interests in the partnership.

■ It is further argued that, even if the corporate entity should not be disregarded, still the net yearly advances made by the partnership should be charged off as bad debts at the end of the year, and allowed as deductions in the individual tax returns of the partners. The applicable tax statutes all provide, however, that only such debts are allowable deductions as are actually "ascertained to be worthless and charged off within the taxable year." Revenue Acts of 1918 and 1921, § 214 (a) (7), 40 Stat. 1066, 42 Stat. 240; Revenue Acts of 1916, § 5 (a) Sixth, 39 Stat. 759; Revenue Act 1917 (40 Stat. 300); Revenue Act of 1913, § II B, 38 Stat. 166, 167. The advances made to the corporation were neither charged off by the partnership during any of the years for which refunds are sought, nor were the amounts "ascertained to be worthless" in those years, for they were followed in subsequent years by further advances in very substantial amounts, indicating clearly that, in so far as the partnership was concerned, the amounts unpaid were open as valid receivables.

■ The final contention of the plaintiffs is that the corporation was merely an agent for

the partnership; but this contention is not borne out by the allegations of the complaints; for plainly the corporation was acting only for itself as proprietor of its own business, and was in no sense an agent for the partnership, which only provided the funds to finance the business. The relation of the partnership was merely that of a creditor, and the fact that the individual partners were largely instrumental in shaping the policy of the corporation did not change the relation of one of agency and make the partnership liable for all of the corporation's acts.

The motions of the defendants to dismiss the amended complaints in all six suits are granted.