**COMMISSIONER OF INTERNAL REVENUE v. SPRING CITY FOUNDRY CO.**

**SPRING CITY FOUNDRY CO. v. COMMISSIONER OF INTERNAL REVENUE.**

Nos. 4912, 4994.

Circuit Court of Appeals, Seventh Circuit.

Nov. 10, 1933.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and William H. Riley, Jr., Sp. Assts. to Atty. Gen., Pat Malloy, Asst. Atty. Gen., and F. Edward Mitchell, Sp. Asst. to Atty. Gen., for Commissioner of Internal Revenue.

Edgar L. Wood and Richard H. Tyrrell, both of Milwaukee, Wis., for Spring City Foundry Co.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge (after stating the facts as above).

The taxpayer was a Wisconsin corporation engaged in manufacturing automobile castings. It sold certain of its goods to Cotta Transmission Company of Rockford, Illinois, which company became indebted to it in 1920, in the sum of $39,983.27.

In the fall of 1920 the debtor's financial breathing became labored. It was unable to meet its obligations and frankly wrote to its creditors asking for a five year extension of credit. Pursuant to this request, the creditors met and appointed a creditors' committee who in turn selected an auditing company to examine the debtor's books. Pending such report a committee of Rockford citizens, interested in keeping the plant going, offered the creditors thirty-three and one-third cents for each dollar of unsecured claims. The credi-

tors declined the offer. The citizens then offered forty cents on the dollar, and the offer was accepted. The time limit for fulfilment was short, and the citizens' committee failed to raise the money within the specified time, which was extended one week. The debtor was, upon petition of three creditors, thereupon adjudged a bankrupt. A receiver was appointed December 24, 1920, who immediately took possession of the property and conducted the business in a desultory sort of a way until the property was sold early in 1922.

The company's books showed it had conducted a successful business from 1911 to 1919, inclusive. Each year showed a substantial profit, and the volume of business grew from $100,000 to $1,963,000. Each year's business was conducted at a profit, the smallest amount being $2,702 and the largest year's profit being $70,203. In 1911, the capital stock was $39,600; raised in 1917 to $100,-000. In 1919, it was increased by the addition of $166,000 preferred stock, and this amount was again increased in 1920. For reasons not appearing, the business turned sour in 1920, and for the first nine and one-half months of that year there was a loss of $84,790.

One asset item entitled to particular consideration was that known as the plant. It was carried on the books of the company at $425,714.91, which figure was accepted by the company making the audit. This item included land, $6,017; factory building, $55,-328; building equipment, $23,722; machinery, $126,375; tool equipment, $192,323; and sundry equipment such as furniture, fixtures, hardening plant, etc., $21,946. Some of the goods manufactured were covered by patents which belonged to the debtor. There is no evidence of patent value other than that which might be inferred from the volume and growth of debtor's business.

Early in 1922, the receiver sold the plant for $175,000 and paid dividends to common creditors, aggregating 27½ per cent.

The appeals raise two questions, both of which bear on the taxpayer's deduction from 1920 income: (a) Was the account, for which the taxpayer claimed a deduction of the whole amount, worthless? (b) If not worthless, was the taxpayer in 1920 permitted to deduct a sum which measured its depreciation?

Was the account worthless?

We could justifiably answer this question by observing that the evidence was such as to warrant the negative answer which the Commissioner and the Board of Tax Appeals gave to it. And it might be added that there was evidence sufficient to sustain an affirmative answer. In other words, the testimony was conflicting, or at least conflicting inferences were deducible therefrom. Nevertheless, as counsel strongly attacked the Board's finding and as the outcome of its appeal depends on the success of this attack, we will discuss the evidence.

■ That the account was not good, not worth even fifty cents on the dollar, is established rather clearly. This is shown by the fact that the creditors, after learning of the debtor's embarrassment, appointed a committee which investigated the debtor's business affairs, and, after such investigation, secured an audit, and, on the receipt of a report on the debtor's business, agreed to take forty cents on the dollar for unsecured accounts.

That the account was not entirely worthless seems equally well established by the fact that the creditors refused to accept a cash offer of thirty-three cents on the dollar. This offer was made in December, 1920, the same month that petitioner charged its account off as worthless. From this evidence alone, the Board was justified in finding that the account was not worthless.

There was, too, the statement of an audit company. True, this audit was one of those valueless statements so commonly made where a balance is struck by copying figures furnished by the company and which showed the amount of the debts on the one side and a statement of the assets on the other. The purported value of the assets appearing in the audit had not the remotest relation to current values. This audit was well nigh worthless, but if it had any value at all, it showed the company was solvent, on which hypothesis the account was worth its face value.

Finally, supporting the Board's finding is the evidence that the receiver sold the manufacturing plant (the major part of the total assets) for $175,000 and paid a dividend after all expenses of administration of 27½ per cent. The plant, which the company carried on its books at $425,000, was unincumbered. The fact that it sold, after bankruptcy intervened, for $175,000 is conclusive proof that the accounts were not worthless, for the proceeds of this item supplied cash sufficient to pay a 27½ per cent dividend.

Against this fact, the taxpayer offered the opinion of its officers and one who was the receiver's representative in the bankruptcy proceeding. Petitioner's officers gave no satis-

factory explanation which would reconcile their refusal to accept thirty-three cents on the dollar with their contention that the account was worthless, save as they were advised by the receiver, a few days after he took his office, December 24, 1920, that the account should be charged off entirely. But the testimony of this receiver's agent must be viewed in the light of our observation of, and experience with, men occupying such positions. It is not uncommon for professional receivers, as well as their counsel, to admit, at the sacrifice of modesty, but in the interest of truth, that their services were of immeasurable value to the estate which is being conserved. Notwithstanding the probative value of admissions, we think the receiver here, as often happens, somewhat overestimated his services and the value of his contribution to the estate. He was a receiver located in Chicago, handling many other receiverships. He took charge of this company's affairs and advertised the property for sale twice. Once he had no bids; the second time he was offered $175,000. This was less than the Rockford citizens had offered before bankruptcy proceedings were instituted, and we are therefore unwilling to assume that it was the receiver's salesmanship or uncanny judgment which was the sole cause of a realization of $175,000 for property of no value. From the record before us, we are convinced that it would have been more logical to conclude that the bankruptcy proceedings were of little help in salvaging the estate and that the account of the taxpayer, while impaired, was far from worthless; that the property, most of which was unincumbered, could under any circumstances have been sold for enough to produce better than thirty cents on the dollar for all unsecured accounts.

We conclude therefore that the evidence sustains the finding of the Board.

■ The foregoing conclusion as to the value of the account makes it necessary for us to consider the second phase of these appeals, viz., the deductibility of a part of a debt which had become impaired in value, but which was not worthless.

The question is one of statutory construction.

The Revenue Act of 1918 provided for the following deductions: "Sec. 234. (a) (4) Losses sustained during the taxable year and not compensated for by insurance or otherwise; (5) Debts ascertained to be worthless and charged off within the taxable year."

Respecting these two sections, two Courts of Appeal have reached different conclusions: Sherman & Bryan, Inc., v. Blair, Commissioner, 35 F.(2d) 713 (C. C. A. 2); Minnehaha National Bank v. Commissioner, 28 F. (2d) 763 (C. C. A. 8). The Board of Tax Appeals, prior to the entry of the decree here reviewed, has uniformly (twenty-six times) held that to be deductible under the 1918 Act, an account must have become *worthless*. Other decisions have been called to our attention, which are worthy of consideration. Davidson Grocery Co. v. Lucas, 59 App. D. C. 176, 37 F.(2d) 806; Murchison Nat. Bank v. Grissom (C. C. A.) 50 F.(2d) 1056; Southern Cal. Box Co. v. U. S. (D. C.) 46 F. (2d) 724; Collin County Nat. Bank v. Commissioner (C. C. A.) 48 F.(2d) 207.

The Act of 1921 (Revenue Act 1921, § 234, 42 Stat. 254) amending this section and permitting deductions which represent the amount of the impaired value of the account is, according to the Commissioner, most significant. Elaborate discussion of the language of the act which allowed deductions, the reasons for the Board's ruling, and other matters worthy of consideration in construing this act of Congress, we think, are unnecessary. We will content ourselves with stating our conclusions which are as follows:

Subdivisions (4) and (5) of subsection (a) of section 234, are mutually exclusive. Subdivision (5) alone covers the taxpayer's case. Subdivision (5) provides for deductions only in case the account is worthless. In other words, there was in 1920 no authority for a debt deduction unless the debt were worthless.

The taxpayer also argues that he was entitled to the special consideration provided for by sections 327 and 328 of the Revenue Act of 1918 (40 Stat. 1093). While it seems to us that the taxpayer made out a somewhat persuasive argument in support of its appeal to the Commissioner, we are not convinced that the action of the Commissioner was an abuse of discretion or that said Commissioner's action is reviewable. Cramer & King Co. v. Commissioner of Internal Revenue (C. C. A.) 41 F.(2d) 24; Williamsport Wire Rope Co. v. United States, 277 U. S. 551, 48 S. Ct. 587, 72 L. Ed. 985; National Bank of Commerce v. United States (C. C. A.) 39 F. (2d) 434.

The order of the Board is reversed with directions to enter one in accordance with the views here expressed.