## BENNETT GLASS & PAINT CO. v. STATE TAX COMMISSION.

No. 6160.  Decided March 29. 1940.  (100 P. 2d 567.)

*Ashby D. Boyle,* of Salt Lake City for plaintiff.

*Joseph Chez,* Atty. Gen., *Alfred Klein,* of Los Angeles, Cal., and *Allen H. Tibbals, Grant A. Brown,* and *Alvin I. Smith,* all of Salt Lake City, for defendant.

WOLFE, Justice.

This case arises under our Corporation Franchise Tax Act. The State Tax Commission refused to allow a deduction of $60,000, claimed by Bennett Glass and Paint Company in its 1935 corporate franchise tax return under the classification of "bad debts."

The facts are undisputed. In 1933 Bennett Glass and Paint Company, hereinafter called the parent corporation, organized a subsidiary corporation, The Washoff Company, for the purpose of distributing a certain product, the formula of which was owned by the parent corporation. Plaintiff

transferred this formula to the subsidiary in return for all the stock in the latter corporation. In order for the subsidiary to carry on an advertising campaign and meet its current obligations, plaintiff from time to time advanced various sums of money. Credit was also extended to The Washoff Company, by way of sales of the Washoff product, manufactured by the plaintiff and sold to the subsidiary for distribution.

By the end of 1935 these advances and credits totaled more than $60,000, after deducting various sums which the subsidiary had returned to plaintiff. At this time the book assets of The Washoff Company were $6,764.68, as compared to total liabilities of $70,690.13. Plaintiff taxpayer, therefore wrote off the sum of $60,000 as a partial bad debt loss for the year 1935. The Tax Commission disallowed the deduction. A hearing was had and a decision rendered to the effect that the claimed deduction constituted "advances in the nature of contributions to capital and cannot, therefore, be taken as a deduction for bad debts."

Section 80-13-8, R. S. U. 1933, provides for certain deductions in computing net income of corporations paying the tax, among them being deductions for

"Losses Sustained.

"(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise. * * *

"Bad Debts.

"(6) Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the tax commission, a reasonable addition to a reserve for bad debts) ; and when satisfied that a debt is recoverable only in part the tax commission may allow such debt to be charged off in part."

No cases have been found from other states dealing with this phase of the corporate franchise tax law, although numerous states have statutes similar to ours. There are federal cases, however, arising under a similar provision in the federal corporate income tax law.

In order to take a deduction for "bad debts" the taxpayer is required to show three things: (1) that there is a debt existing in fact; (2) that it was ascertained to be worthless within the taxable year; and (3) that it was charged off in the taxable year. See *Motter* v. *Wallace*, 10 Cir., 72 F. 2d 678; *Jones* v. *Commissioner*, 7 Cir., 38 F. 2d 550.

The Tax Commission found that the advances or credits were not "debts" but were contribution to capital and therefore not deductible in 1935. And if there is reasonable support in the evidence for the Commission's finding, it must be sustained. Defendant Commission concedes, however, that if the advances in this case were loans, rather than contribution to capital, they were deductible as "bad debts" in 1935, the requirements that the debt be ascertained to be worthless and charged off in that year having been fulfilled.

Subdivisions (5) and (6) of our statute, quoted above, allowing certain deductions from gross income, are mutually exclusive, and what should be deducted as a "bad debt" under subdivision (6) cannot be considered as a "loss sustained" under subdivision (5). *Commissioner* v. *Spring City Foundry Co.*, 7 Cir., 67 F. 2d 385, affirmed in *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182, 54 S. Ct. 644, 78 L. Ed. 1200.

The sole question for determination then is whether there is reasonable support in the evidence for the Commission's finding that the alleged deduction did not come within the meaning of "bad debts" under subdivision (6). (For a good discussion on what constitutes a "debt" and what a "loss" under the provisions of the federal act, see *Electric Reductions Co.* v. *Lewellyn*, 3 Cir., 11 F. 2d 493; *Porter* v. *United States*, D. C. Idaho, 20 F. 2d 935; *M. A. Burns Mfg. Co.* v. *Commissioner*, 9 Cir., 59 F. 2d 504; *American Cigarette & Cigar Co.* v. *Bowers*, D. C. N. Y., 17 F. Supp. 931). See, also, *Eckert* v. *Commissioner*, 2 Cir., 42 F. 2d 158 (af-

firmed in *Eckert* v. *Burnet, Commissioner,* 283 U. S. 140, 51 S. Ct. 373, 75 L. Ed. 911.)

The evidence does not support the Commission's finding. The record discloses that at the time it was proposed to put the Washoff product on the general market, John F. Bennett, then president of Bennett Glass and Paint Company, opposed "investing" any money in the enterprise. It was therefore agreed that a corporation would be organized, the capital stock of which would be taken by the parent corporation in exchange for the Washoff formula and the right of distribution of the Washoff product "so that no money would be necessary." However, inasmuch as some cash would be required to get the new company started it was further agreed that such cash as would be needed would be advanced by taxpayer "as a loan to The Washoff Company to be paid back out of profits.

All the advancements made by plaintiff to its subsidiary, as well as the credit extended to the latter in the purchase of the Washoff product from the parent corporation, were carried on taxpayer's books as "accounts receivable," under the special item of "Washoff Company." No notes were given. When payments were received from The Washoff Company, they were credited upon this account. On the books of The Washoff Company the account was carried as a "liability" to Bennett Glass and Paint Company.

It is not argued that the plaintiff herein could not make a loan to its subsidiary. Nor can we see any reason why such a loan could not be made. The contention in this case is that the transactions involved do not show a loan. The evidence, however, is to the contrary. No advancement was authorized except as "a loan." It is true that in authorizing the making of loans it was stated that such loans were "to be paid back out of profits." But there is no evidence in the record that in making the actual advancements there was any agreement between the two corporations for a conditional repayment. From the evidence adduced it appears that the parent corporation was in the same

position toward its subsidiary as any general creditor would be. However, even though it be assumed that repayment of the advancements was conditional, yet it has been held such does not preclude the advancement from being a loan. *Island Petroleum Co.* v. *Commissioner,* 4 Cir., 57 F. 2d 992, 994, where the court held:

> "And it makes no difference in the result, if we construe the agreement as requiring repayment by the Texas corporations only in the event that their operations should prove successful. A loan is no less a loan because its repayment is made contingent; and a taxpayer has no right to treat it as a loss until the contingency has occurred or its worthlessness has been otherwise determined."

Nor is the fact that the advancements and credits were not evidenced by notes sufficient to show that they were not intended to create a debt, where they were carried on the books of the parent corporation as "accounts receivable." See *Selden* v. *Heiner,* D. C. Pa., 12 F. 2d 474, where the court permitted the taxpayer to deduct certain sums advanced to a subsidiary corporation where the advancements were evidenced only on an open account. There, as here, there was no question raised with respect to the correctness of the account, but only whether it was deductible. See, also, *Jamison* v. *Edwards,* D. C. N. Y., 3 F. Supp. 302, 304, where advances were treated by the court as debts. However, it was held in that case that the debts were not ascertained to be worthless nor charged off "for they were followed in subsequent years by further advances in very substantial amounts, indicating clearly that, in so far as the partnership was concerned, the amounts unpaid were open as valid receivables."

It has been held that where advances are made with a view of being repaid, and not as gifts, they may be deducted as "bad debts." *United States* v. *Collier,* 5 Cir., 104 F. 2d 420. But where advances are made without expectation of being repaid they cannot later be deducted as "bad debts." *American Cigar Co.* v. *Commissioner,* 2 Cir., 66 F. 2d 425, 427. The court there held:

"Therefore, according to the petitioner's own contention and the finding of the Board, these sums were advanced in the belief that they would never be repaid, and the notes which the petitioner took were believed to be uncollectible. Such advances, made with the belief they would not be repaid, are in the nature of gifts, and are not deductible as bad debts. *Hayes* v. *Commissioner of Internal Revenue*, 17 B. T. A. 86. See *Shiman* v. *Commissioner of Internal Revenue* (C. C. A.) 60 F. (2d) 65, at page 66. The advances were in reality contributions to the capital of the Havana Company, in which the petitioner was a stockholder. Contributions to capital cannot be deducted as debts ascertained to be worthless. *Olds* v. *Commissioner of Internal Revenue*, 18 B. T. A. 1215; *Floyd* v. *Commissioner of Internal Revenue*, 11 B. T. A. 903. Cf. *Burns* v. *Commissioner of Internal Revenue* (C. C. A.) 31 F. (2d) 399; *United States* v. *Oregon-Washington R. & Nav. Co.* (C. C. A.) 251 F. 211."

The evidence in the instant case clearly shows that the advances made by plaintiff were not gifts but were intended to be repaid.

A recent case decided by the district court for the southern district of New York, *Ronald Press Co.* v. *Shea*, D. C. N. Y. 27 F. Supp. 857, 859, involves a similar situation to the one here presented. The parent corporation, in that case, "directed the activities of its subsidiaries * * * and advanced to them from time to time the money needed to carry on their operations. In fact, the accounts of the operations of the subsidiaries were recorded on the plaintiff's books, as charges against the subsidiary corporations." In holding that these advances were deductible as bad debts, the court said:

"The net loss allowed as a deduction under Section 117 of the Revenue Act of 1928 [26 U. S. C. A. § 117 note] may result from an investment under Section 23 (f) or a bad debt under Section 23 (j), 26 U. S. C. A. § 23 (f) and (j) note. If plaintiff suffered this net loss in either form in 1928, on the liquidation of its subsidiary, it would be deductible in 1929 and 1930. A parent corporation's financial interest in its affiliate may be a stock interest, loans on notes or bonds, or advances for current expenses. *Advances to the affiliate would be accounts receivable of the parent corporation, unless it chose at a later date to capitalize them for some good reason.*" (Italics added.)

In the instant case plaintiff made the advances to the subsidiary as "loans" and entered them on its books under "accounts receivable." Some payments were received from The Washoff Company, and credited to the account. At no time were the advances or credits charged to the item "investments in subsidiaries" although such an account was kept by plaintiff in its books for the purpose of supplying capital to such of its subsidiaries as might be unable to take care of their merchandise accounts within a reasonable time.

The fact that plaintiff did not "capitalize" these advances as it did occasionally where credits to other subsidiaries were involved indicates that such advances were strictly loans. Taxpayer.is now trying only to sustain the same position it has adhered to throughout its dealings with its subsidiary. If it were now trying to take as a "loss" what it has considered throughout as "debts," it might well be argued that taxpayer could not take an inconsistent position with what it had theretofore maintained in order to take a deduction in a different year than it would have been permitted to otherwise.

The Commission raises no question of good faith on the part of the plaintiff. No contention is made that the dealings between taxpayer and its subsidiary were not bona fide transactions. The fact that the plaintiff ■ has claimed the deduction during a year for which it might otherwise have a large taxable income makes no difference so long as the deduction claimed is proper.

From what has been said above it can be seen that the Commission should have allowed the deduction of $60,000 claimed by plaintiff as "bad debts." The ruling of the Tax Commission is, therefore, reversed. Costs to plaintiff.

MOFFAT, C. J., and LARSON, McDONOUGH, and PRATT, JJ., concur.